GREENBERG TRAURIG, LLP
James W. Perkins (JWP-6684)
Bryn K. Haffey (BH-0519)
200 Park Avenue
New York, New York 10166
Tel: (212) 801-9200
Fax: (212) 801-6400
*Attorneys for Petitioner*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEANNETTE HAUSLER, | 09 Civ. 10289 (VM) |
| Petitioner, | (Related to the JPM Chase/Citibank Turnover Proceeding) |
| v. | RE: Fidel Castro Ruz, Raul Castro Ruz, The Republic of Cuba, and The Cuban Revolutionary Armed Forces |
| JP MORGAN CHASE BANK, N.A, CITIBANK, N.A., THE ROYAL BANK OF SCOTLAND N.V. (FORMERLY KNOWN AS ABN AMRO, N.V.), and NATIONAL BANK OF CANADA, | [JUDGMENT DEBTORS] |
| Garnishee Respondents. | |

**PETITIONER'S REPLY MEMORANDUM IN SUPPORT**
**OF TURNOVER ORDER FOR SINKING FUND RESERVE**

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

POINT I    THE ARANS HAVE FAILED TO COMPLY WITH THE
           REQUIREMENTS ESTABLISHED BY THIS COURT'S ORDER .................. 3

           1.    The Arans Have Failed to Prove That They Hold 4-1/2% External
                 Debt Bonds and Have Failed to Produce Copies of the Bonds as
                 Required by the Court's Order and Notice .................................................... 4

           2.    The Arans Have Failed to Identify the Date on and Manner in
                 Which Each of the Bonds Associated With Their Claim Were
                 Acquired as Required by the Court's Order and Notice ............................... 5

           3.    The Arans Have Failed to Identify Any Steps Taken to Redeem
                 Their Claimed Bonds or to Perfect Their Claim, Whether Pursuant
                 to the Filing of a Claim With the Foreign Claims Settlement
                 Commission, or Otherwise ........................................................................... 6

POINT II   THE ARANS DO NOT HAVE A LEGALLY COGNIZABLE
           CLAIM AS TO ANY OF THE 4-1/2% EXTERNAL DEBT BONDS ................ 7

POINT III  THE BONDS DO NOT PROVIDE ANY SECURITY INTERESTS
           AGAINST THE SINKING FUND ...................................................................... 8

POINT IV   THE CLAIMS OF ALL OWNERS OF THE BONDS ARE BARRED
           BY THE INDENTURE'S TERMS ...................................................................... 9

POINT V    EVEN ASSUMING *ARGUENDO* THAT THE ARANS HAVE A
           CLAIM, AS A PERFECTED JUDGMENT CREDITOR CLAIM,
           PETITIONER'S CLAIM HAS PRIORITY OVER THE ARANS'
           CLAIM ........................................................................................................... 11

CONCLUSION .................................................................................................................. 13

## TABLE OF AUTHORITIES

Federal Cases                                                                        Page(s)

*In re New Life Builders, Inc.*, 241 B.R. 507 (W.D.N.Y. 1999) ................................................... 11

*Lary v. Republic of Cuba*, 643 F. Supp. 194 (S.D.N.Y. 1986), *aff'd*,
   814 F.2d 653 (2nd Cir. 1987) ............................................................................. 7, 10, 13

*Rothenberg v. Chloe Foods Corp.*, 2007 WL 2128376 (E.D.N.Y. 2007) ................................... 12

*United States v. Talco Contractors, Inc.*, 1999 WL 500989 (W.D.N.Y. 1999) ......................... 11


State Cases

*Beef & Bison Breeders, Inc. v. Capitol Refrigeration Co.*, 105 Misc.2d 275
   (N.Y. Supr. Ct. Spec. Term Albany Co. 1980) ......................................................... 12

*Berkowitz v. Chavo Int'l, Inc.*, 144 A.D.2d 263 (1st Dep't 1988) .............................................. 12


Federal Statutes

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297;
   116 Stat. 2337, codified at 28 U.S.C. § 1610 .......................................................... 1


State Statutes

N.Y. C.P.L.R. § 5225(b) ............................................................................................................ 1

N.Y. U.C.C. § 9-317 ................................................................................................................ 12

N.Y. U.C.C. § 9-322 ................................................................................................................ 12


Federal Rules

Fed. R. Civ. P. 69 ...................................................................................................................... 1


Federal Regulations

31 C.F.R. § 515.201(b)(1) .......................................................................................................... 7

31 C.F.R. § 515.309 .................................................................................................................. 7

31 C.F.R. § 515.203(a) .............................................................................................................. 7

Petitioner Jeannette Fuller Hausler ("Petitioner") respectfully submits this memorandum in reply to filings made in connection with her Petition for an order directing turnover of the amount reserved from the payment of the Sinking Fund addressed in this Court's Order of December 15, 2010 (Dkt No. 115), to the extent modified by the Court's Order dated January 10, 2011 directing reconsideration at the request of Interpleader Defendants Fernando S. Aran, individually and on behalf of his wife Marianela Morejon Aran (the "Interpleader Defendants").

## INTRODUCTION

This proceeding relates to the enforcement of an Order and Judgment of this Court, dated September 22, 2008, duly registering a judgment entered by the United States District Court for the Southern District of Florida, which granted full faith and credit to an Amended Final Judgment that the Eleventh Judicial District in and for Miami-Dade County, Florida, entered in favor of Petitioner and against Defendants-Judgment Debtors The Republic of Cuba, Fidel Castro Ruz, Raul Castro Ruz, and the Cuban Revolutionary Armed Forces (the "Judgment Debtors"), awarding total damages against the Judgment Debtors in the amount of $100,000,000.00 in compensatory damages and $300,000,000.00 in punitive damages, including interest at the rate of 9% per year from the date of entry of the judgment until satisfied, of which $97,929,585.32 of the compensatory damages and of which $300,000,000.00 of the punitive damages remains unsatisfied, not including interest accruing on and after the date of the judgment (the "Hausler Judgment").

In connection with the efforts of Petitioner to enforce that judgment, Petitioner commenced this proceeding pursuant to § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297; 116 Stat. 2337, codified at 28 U.S.C. § 1610 note, and pursuant to N.Y. C.P.L.R. § 5225(b), made applicable through Fed. R. Civ. P. 69, to enforce her judgment against Judgment Debtors, and to compel garnishee/respondent JPMorgan Chase Bank, N.A.

("JPM Chase") to turn over to the United States Marshal certain funds held in the accounts specified below, in amounts not to exceed in the aggregate $99,000,000.00 plus accrued interest. Funds include those in an account identified by JPM Chase as Republic of Cuba Interest Account T7161 (Account No. 125259.1), with a balance of approximately $3,569,448.54 as of March 6, 2008, which is a sinking fund (hereinafter "the Sinking Fund") established to pay principal and interest on the Republic of Cuba's 4-1/2% Bonds of the External Debt of the Republic of Cuba, 1937-1977 (the "4-1/2% External Debt Bonds").

By Order dated November 5, 2010, this Court found that all prerequisites had been met in order to allow Petitioner's execution of her judgment against the Sinking Fund, and ordered turnover of most, but not all, of the balance of the Sinking Fund.  As requested by Petitioner, this Court ordered that approximately $609,000 be reserved from the balance of the Sinking Fund until certain parties claiming to own the sum of the 4-1/2% External Debt Bonds were provided sufficient time and opportunity to provide written notice of their claims to amounts in the Sinking Fund (and to provide specific information in support of their claims) and to appear in this Court by filing an answer to the interpleader filed by JPM Chase and served on them.

When none of the parties filed an answer to the interpleader by November 30, 2010 (as specified by this Court), Petitioner requested by letter that the Court issue an order directing payment of the balance of the reserve.  The Court, thereafter, issued a turnover order for the balance of the reserve on December 15, 2010.  Thereafter, Fernando S. Aran, individually and on behalf of his wife Marianela Morejon Aran, who claim to jointly own some of the 4-1/2% External Debt Bonds, moved by letter dated January 4, 2011, for reconsideration of the Order of December 15, 2010, and to direct that their interpleader answer be treated as timely filed.  The Court granted their motion on January 10, 2011.

As demonstrated below, the Arans have failed to make the showing required by the Court to demonstrate that they have a legally cognizable or enforceable claim to any portion of the Sinking Fund.  Rather, by any measure, Petitioner's right to satisfy her judgment by executing against the Sinking Fund takes precedence over any right that the Arans' could possibly claim. Thus, this Court should dismiss the Arans' claim, grant judgment in favor of Petitioner and confirm its order directing payment of the remaining reserved amounts of the Sinking Fund, as directed in the Order of December 15, 2010.

## ARGUMENT

### POINT I

### THE ARANS HAVE FAILED TO COMPLY WITH THE REQUIREMENTS ESTABLISHED BY THIS COURT'S ORDER

In the Court Ordered Notice to All Persons or Entities Holding 4-1/2% Bonds of the External Debt of the Republic of Cuba 1937-1977 (the "4-1/2% External Debt Bonds"), this Court required:

> Any party who is such a holder of the 4-1/2% External Debt Bonds must give notice of an intention to assert such a claim on or before October 31, 2010 by submitting a notice of claim to the counsel identified below which provides the following information:
>
> (a) the principal amount of the 4-1/2% External Debt Bonds held, together with copies of such Bonds;
>
> (b) the date on which each of such 4-1/2% External Debt Bonds was acquired, and the manner in which the Bonds were acquired; and
>
> (c) any steps taken to redeem your Bonds or to perfect your claim, whether pursuant to the filing of a claim with the Foreign Claims Settlement Commission, or otherwise.

Notice to All Persons or Entities Holding 4-1/2% Bonds of the External Debt of the Republic of Cuba 1937-1977 (the "4-1/2% External Debt Bonds"), Dkt. No. 78, Exhibit A (filed Aug. 13, 2010). *See also* Dkt. No. 97 (proof of publication of the Court-Ordered Notice).

The Court's Order permitting the late filing of the Aran's Answer to the Interpleader, the Arans have still failed to make each of the required showings required by the Court-Ordered Notice.

1.      **The Arans Have Failed to Prove That They Hold 4-1/2%
        External Debt Bonds and Have Failed to Produce Copies
        of the Bonds as Required by the Court's Order and Notice**

Paragraph (a) of the Court Ordered Notice required the Arans to notify Counsel for Petitioner of "the principal amount of the 4-1/2% External Debt Bonds held, together with copies of such Bonds."  As of the date of this filing, the Arans have still failed to provide proof that they hold bonds that are even related to the Sinking Fund at issue in the present proceeding, *i.e.*, 4-1/2% External Debt Bonds of the Republic of Cuba; and also failed to produce copies of the bonds they claim to own also in violation of the Court's requirements contained in the Notice.

Instead, the Arans have submitted the attached self-proclaimed fax and "self-explanatory letter" in which the Arans (either pro se or as represented by the law firm of Aran Correa Guarch & Shapiro PA) made the following claim which is quoted below in full and attached as Exhibit A:

> Dear Counsel:
>
> The undersigned and the law firm of Aran Correa Guarch & Shapiro, P.A. represent the interests of Matilde Ruiz de Zarate (the "Assignor") and Fernando S. Aran and Marianela M. Aran (the "Assignees") of 41,000 shares of Cuba Republic Bonds which matured June 30th, 1977.  (41-$1,000.00 Bonds).
>
> Please accept this letter as the notice of claim as required under the Notice of Action Seeking Turnover of Funds.  The Bonds owned by the Assignees are currently held by Merrill Lynch, Pierce, Fenner & Smith under account number 73862956.  A copy of their recent communication regarding the Bonds is enclosed.

Fax dated October 29, 2010 to Counsel for Petitioner and Garnishee-Respondent. Accompanying the letter is an "Important Notice Regarding Your Account Number 738-62596"

4

which indicates that Fernando Aran and Marianela Aran are the registered owners of "your brokerage account as holding 41,000 shares of Cuba Republic securities that are blocked (frozen) pursuant to economic sanctions directed at Cuba."

Nowhere does this Notice of Claim pursuant to the Court-ordered Notice demonstrate ownership of the 4-1/2% External Debt Bonds that are the subject of the Notice – only that the Arans are the owners of 41,000 shares of "Cuba Republic Securities".  Nor have the Arans shown that they have possession of the 4-1/2% External Debt Bearer Bonds – only that they have a brokerage account (rather than a safety deposit box or vault account) containing 41-$1,000.00 Bonds as claimed by the Arans in the Notice.

And, of course, all of these concerns could have been addressed and alleviated had the Arans complied with this Court's order to produce copies of such bonds – which are by definition "bearer bonds" requiring possession to enforce -- which they also failed to do.[1]

For these reasons, the Arans have failed to properly state and prove their claim in accordance with this Court's prior Order and accordingly their claim is barred, and cannot serve as any basis to impede Petitioner's execution against the Sinking Fund.

2. **The Arans Have Failed to Identify the Date on and Manner in Which Each of the Bonds Associated With Their Claim Were Acquired as Required by the Court's Order and Notice**

Paragraph (b) of the Court Ordered Notice required the Arans to notify Counsel for Petitioner of "the date on which each of such 4-1/2% External Debt Bonds was acquired, and the manner in which the Bonds were acquired."  As of the date of this filing, the Arans have still

---

[1] In their Answer to the Interpleader Petition filed by JPMorgan Chase, the Arans admit that the "4-1/2% External Debt Bonds of the Republic of Cuba" to which they now claim ownership "were issued in bearer form," requiring possession for enforcement in any case.  *See* Arans Answer to the Interpleader Petition at para. 2 (admitting the allegations set forth in Interpleader Petition paragraph 13).

failed to identify the date on which each of the Bonds that are supposedly the basis for their claim were acquired by them.

Instead, the "letter as the notice of claim as required under the Notice of Action Seeking Turnover of Funds" submitted by the Arans merely indicated that the Arans were the Assignees of 41,000 shares of Cuba Republic Bonds. As required by the Court's Order and Notice, there is no indication whether the Assignment was, for example, as a gift or for value received.

For these reasons, the Arans have failed to properly state and prove their claim in accordance with this Court's prior Order and accordingly their claim is barred, and cannot serve as any basis to impede Petitioner's execution against the Sinking Fund.

### 3. The Arans Have Failed to Identify Any Steps Taken to Redeem Their Claimed Bonds or to Perfect Their Claim, Whether Pursuant to the Filing of a Claim With the Foreign Claims Settlement Commission, or Otherwise

Paragraph (c) required that the Arans state "any steps taken to redeem your Bonds or to perfect your claim, whether pursuant to the filing of a claim with the Foreign Claims Settlement Commission, or otherwise." As of the date of this filing, the Arans have still not answered this question in either the affirmative or the negative as required by the Court's Order and Notice.

However, neither the Arans, nor even the Morejons are listed as "Parties that Filed Claims Relating to the Issue of Bonds Known as the 4-1/2% Bonds of the External Debt of the Republic of Cuba, 1937-1977 against the Republic of Cuba with the Foreign Claims Settlement Commission." *See* Exhibit F to the Joint Submission Regarding Petition for Turnover Filed July 1, 2010 (Tranche 2: Turnover Petition II) (listing such claimants) (attached hereto as Exhibit B).

For these reasons, the Arans have failed to properly state and prove their claim in accordance with this Court's prior Order and accordingly their claim is barred, and cannot serve as any basis to impede Petitioner's execution against the Sinking Fund.

**POINT II**

**THE ARANS DO NOT HAVE A LEGALLY COGNIZABLE**
**CLAIM AS TO ANY OF THE 4-1/2% EXTERNAL DEBT BONDS**

Furthermore, as a matter of law, the Arans do not have a legally cognizable claim as to any of the 4-1/2% External Debt Bonds, and therefore have no standing to claim any interest in the Sinking Fund, under any circumstances.  As the Arans assert (and therefore admit) in their "letter as the notice of claim as required under the Notice of Action Seeking Turnover of Funds," they are the "Assignees" of 41,000 shares of Cuba Republic Bonds from Matilde Ruiz de Zarate (the "Assignor").  The Arans' letter to the Court dated January 4, 2011 provides additional information regarding this apparent transfer by gift to the Arans from Mr. Arans' mother in law, Matilde Ruiz de Zarate:

> My wife's family held and have with much sacrifice held forty one thousand shares (41 $1,000.00 bonds) for many years. They have passed this on to my wife Marienela and I. Their wish and in the case of my ailing mother-in-law her continued wish, is that one day these funds be released to the family.

Letter to the Honorable Victor Marrero dated January 4, 2011 at 2.

Under governing regulations issued by the Office of Foreign Asset Control ("OFAC"), as codified by the Libertad Act, title or any other ownership interest in these assets may not be transferred, including by gift.  *See* 31 C.F.R. § 515.201(b)(1) (prohibiting transfers of evidence of indebtedness of Cuba); § 515.309 (defining "transfer" to include "gift").  In accordance with Section 203 of those regulations, § 515.203(a), this purported transfer is therefore "null and void and shall not be the basis for the assertion or recognition of any right, remedy power, or privilege with respect to, or interest in" the blocked property embodied in the 4-1/2% External Debt Bonds.  *See Lary v. Republic of Cuba*, 643 F. Supp. 194, 196 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987).

In their Answer to the Interpleader Petition, the Arans admit the allegations in the Interpleader Petition that the only claimants to whom the Interpleader was directed and who may have a claim to the Sinking Fund were "holders of the 4-1/2% External debt Bonds who acquired such Bonds prior to June 8, 1963, or who acquired such Bonds pursuant to a validly-issued license or by operation of law subsequent to that date."  *See* Arans Answer to Interpleader at para. 2 (admitting the allegations contained in Interpleader Petition paragraphs. 4 and 12).  Dkt. No. 124.  Accordingly, as demonstrated above, the Arans also admit that they do not have a legally cognizable claim to the Sinking Fund.

For these reasons, as a matter of law, the Arans' claim as to these bonds is barred, and cannot serve as any basis to impede Petitioner's execution against the Sinking Fund.

### POINT III

### THE BONDS DO NOT PROVIDE ANY<br>SECURITY INTERESTS AGAINST THE SINKING FUND

Moreover, contrary to the implications in the Arans' motion papers, the owners of the 4-1/2% External Debt Bonds are **not** entitled to claim to have, and do not have, a secured interest in the Sinking Fund.  As demonstrated by the indenture produced to Petitioner by JPM Chase, the owners of the 4-1/2% External Debt Bonds do have a lien to secure payment of the bonds, but that lien applies **not to the Sinking Fund,** but to 90 percent of Cuba's tax revenues, as defined in the indenture.  *See* Indenture Agreement ¶ 14.  The indenture did not specify that any bondholder had any interest of any specific type in the Sinking Fund created thereunder.  A copy of this indenture is attached hereto as Exhibit C.  Therefore, the claims of the owners of the 4-1/2% External Debt Bonds have no connection to the Sinking Fund in any respect.

For this reason, as a matter of law, even if the Arans could demonstrate that they owned any of the 4-1/2% External Debt Bonds, this would not serve as any basis to impede Petitioner's execution against the Sinking Fund.

## POINT IV

### THE CLAIMS OF ALL OWNERS OF THE BONDS ARE BARRED BY THE INDENTURE'S TERMS

Fourth, under the terms of the indenture, the bond holders were required to present the bonds for redemption by 1977:

> Any Bonds outstanding on the final due date, that is to say June 30, 1977, which may not have been purchased and retired or redeemed in accordance with the preceding Articles, shall be paid by the Agent to the extent of funds in its hands for that purpose on their presentation on their due date, in full if such funds suffice therefor, otherwise pro rata.

*Indenture Agreement,* ¶ 21.  Accordingly, prior to the final due date, any unused funds in the Sinking Fund – and any interest paid by Manufacturers Hanover on those funds – would be used to repurchase and retire any outstanding bonds, **for the title and benefit of Cuba**, and without any right in the bond holders to affect Cuba's use of these funds in this manner.  *Id.*  And, under the explicit terms of the indenture, any and all funds in the Sinking Fund – including all accrued interest thereon – would be returned to Cuba six years after the 1977 redemption date, in 1983, whether or not any of the bondholders had been paid; in full, in part, or even at all:

> Six years after the due date of any interest coupon the Agent shall return to the Republic the amounts held for the payment of such interest coupons due on that date which shall not have been presented for payment.  Similarly, six years after each redemption date, the Agent shall return to the Republic the amounts corresponding to those bonds called for redemption on that date, which shall not have been presented for payment, and six years after June 30, 1977, the Agent shall return to the Republic the amounts corresponding to the remaining Bonds which, not having been redeemed nor purchased, should have been paid on June 30, 1977 and shall not have been presented for payment.

*Id.* ¶ 25.

9

In discovery, JPM Chase has not identified any records indicating that any bond holder ever presented a claim to Manufacturers Hanover or its successor in interest (or sought a license from OFAC) prior to the claim date in 1977 or even the mandatory return date in 1983. This fact was reinforced by Cuba itself, which through Cuba's long-time counsel in the *Lary* case – a case involving the very indenture at issue here – indicated that there is no record that any of the owners of the 4-1/2% External debt Bonds ever brought a claim to enforce the bonds in accordance with their terms.

Indeed, as reflected in the Sworn Statement of Michael Krinsky, filed in an earlier proceeding in *Lary v. Republic of Cuba*, there is no record that any of the owners of the 4-1/2% External Debt Bonds has ever brought a claim to enforce the bonds in accordance with their terms. As Mr. Krinsky stated:

> My firm has represented the Republic of Cuba and its agencies and instrumentalities in all matters concerning the United States for the last twenty-five years.… To our knowledge, this [*i.e.*, the *Lary* case] is the first action brought on these bonds despite the passage of twenty-five years since the Republic of Cuba's last payment on them in 1960 and 1961.

Sworn Statement of Michael Krinsky, filed in District of Columbia Civ. Action No. 86.0028 (dated January 7, 1986) available in the record in *Lary v. Republic of Cuba*, 643 F. Supp. 194 (S.D.N.Y., 1986) (Sweet, D.J.), *aff'd*, 814 F.2d 653 (2nd Cir. 1987) and attached as Exhibit C to the Joint Submission Regarding the Tranche 2 Turnover Petition at Dkt. No. 44-3 and attached hereto as Exhibit D.

Thus, by 1983, the terms of the indenture would have operated to eliminate any claim by any person other than Cuba – including any owner of any of the 4-1/2% External Debt Bonds – to any interest in the Sinking Fund. For this reason, as a matter of law, even if the Arans could demonstrate that they owned any of the 4-1/2% External Debt Bonds, this would not serve as any

basis to impede Petitioner's execution against the Sinking Fund.  To the contrary, under TRIA, Petitioner has a legally enforceable right to execute against these funds, which are unqualifiedly owned by Cuba.  *See* TRIA § 201(a).

**POINT V**

**EVEN ASSUMING *ARGUENDO* THAT THE ARANS HAVE
A CLAIM, AS A PERFECTED JUDGMENT CREDITOR CLAIM,
PETITIONER'S CLAIM HAS PRIORITY OVER THE ARANS' CLAIM**

Fifth, even assuming that the Arans could overcome all of the foregoing impediments to their claim to an interest in the Sinking Fund *and* could demonstrate that New York law has any relevance in determining the priority of claims to the Fund, the Petitioner's claim (based on her status as a judgment creditor) would still take priority over the Arans claim, since the Aran's claim is unsecured.  Under New York creditor's rights laws, a creditor who has levied on the assets of a debtor perfects its lien when it delivers a writ of execution to the sheriff or marshal. *In re New Life Builders, Inc.,* 241 B.R. 507, 509 (W.D.N.Y. 1999)("[A] lien is obtained upon the personal property of the judgment debtor, except upon such property as is exempt, when the execution has been actually delivered to the sheriff to be executed.")(citing *In re Marceca,* 129 B.R. 369, 370 (Bankr. S.D.N.Y. 1991)).  *See also* CPLR 5202(a)(providing for execution creditor's priority rights over transferee); § 5234(b)(providing execution creditor filing execution with Marshal has priority of other creditors filing later in time).  Here, Petitioner's lien was, therefore, perfected no later than March 27, 2009, when Petitioner delivered the writ of execution to the Marshal.  (*See* Tranche II Petition, Exhibit B, Dkt. No. 29-4.)

In comparison and contrary to the express terms of the indenture creating the Sinking Fund, at best, the Arans have an unperfected security interest in the monies in the Sinking Fund, as they neither filed a UCC-1 financing statement nor hold such funds. *United States v. Talco Contractors, Inc.,* 1999 WL 500989, at *3 (W.D.N.Y. 1999)(holding failure to file financing

statement under U.C.C. Article 9 for security interest in general intangibles results in unperfected security interest, subject to rights of other lien creditors); *Beef & Bison Breeders, Inc. v. Capitol Refrigeration Co.,* 105 Misc.2d 275, 277 (N.Y. Supr. Ct. Spec. Term Albany Co. 1980)(holding that failure to file proper financing statement results in unperfected security interest, subject to priority rights).  *See also* N.Y. U.C.C. §§ 9-317 and 9-322 (providing that perfected judgment lien has priority over unperfected security interest); *Rothenberg v. Chloe Foods Corp.,* 2007 WL 2128376, at *12 (E.D.N.Y. 2007)("if a bank takes a security interest in the debtor's equipment but fails to file a financing statement or to take possession, and an unsecured creditor levies against the property and so procures a judicial lien on it, this formerly unsecured creditor (now a "lien creditor") will defeat the prior unperfected secured creditor); *Berkowitz v. Chavo Int'l, Inc.,* 144 A.D.2d 263, 263-64 (1st Dep't 1988)(holding levying judgment creditor has priority over unperfected secured creditor).

Thus, even assuming the Arans' had a secured interest in Sinking Fund assets, they would be second in line to Petitioner.  Since the amounts in the Sinking Fund do not satisfy Petitioner's judgment, the Arans are not permitted a recovery here.  Accordingly, under TRIA, the Petitioner has an unqualified right to enforce her judgment against the Sinking Fund, irrespective of the claims by the Arans.

## CONCLUSION

In sum, Petitioner submits that there is no basis for the Arans to contest the right of the Petitioner to the funds held in the name of the Republic of Cuba which were deposited with JPM Chase's predecessor as the Sinking Fund.  No original or historic bondholder had a legal entitlement to those funds, see *DeCuellar, supra,* and no subsequent purchaser could lawfully execute any transaction to obtain any interests in the Sinking Fund, see *Lary, supra.*  Moreover, as Cuba asserted in *Lary,* any attempt to enforce the bonds would be barred under the statute of limitations.  For these same reasons, we submit that any notice procedure would be superfluous and inordinately delay Petitioner in her right to recover the sinking funds, and should not be required by the Court.  Accordingly, Petitioner respectfully requests that the Court order turnover of the subject funds substantially in the form of order attached hereto as Exhibit E.

Dated: New York, New York
     January 19, 2011

GREENBERG TRAURIG, LLP

By:_____
     James W. Perkins
     Bryn K. Haffey
     *Attorneys for Petitioner*
     200 Park Avenue, 38th Floor
     New York, New York 10166
     Phone: (212) 801-9200
     Fax:   (212) 801-6400

COLSON HICKS EIDSON
     Roberto Martinez
     Ronald W. Kleinman
     255 Aragon Avenue
     Second Floor
     Coral Gables, Florida 33134
     Phone: (305) 476-7400
     Fax:   (305) 476-7444

GREENBERG TRAURIG, LLP
     David A. Baron
     2101 L Street, N.W.,
     Suite 1000
     Washington DC 20037
     Phone: (202) 331-3100
     Fax:   (202) 331-3101

13