UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEANNETTE HAUSLER, | 09 Civ. 10289 (VM) |
| Petitioner, | (Related to the JPM Chase/Citibank Turnover Proceeding) |
| v. | RE: Fidel Castro Ruz, Raul Castro Ruz, The Republic of Cuba, and The Cuban Revolutionary Armed Forces |
| JP MORGAN CHASE BANK, N.A, CITIBANK, N.A., THE ROYAL BANK OF SCOTLAND N.V. (FORMERLY KNOWN AS ABN AMRO, N.V.), and NATIONAL BANK OF CANADA, | |
| Garnishee-Respondents. | |

**PETITIONER'S REPLY MEMORANDUM IN SUPPORT
OF TURNOVER ORDER FOR SINKING FUND RESERVE**

GREENBERGTRAURIG, LLP
*Attorneys for Petitioner Jeannette Hausler*
MetLife Building
200 Park Avenue
New York, New York 10166
(212) 801-9200

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 4

POINT I  MR. STANCIL HAS FAILED TO COMPLY WITH THE REQUIREMENTS ESTABLISHED BY THIS COURT'S ORDER ....................................................... 4

    1.    Mr. Stancil Has Failed to Prove That he Holds 4-1/2% External Debt Bonds and Has Failed to Produce Copies of the Bonds as Required by the Court's Order and Notice ................................................... 4

    2.    Mr. Stancil Has Failed to Identify the Date on and Manner in Which Each of the Bonds Associated With Their Claim were Acquired as Required by the Court's Order and Notice ............................. 5

POINT II  MR. STANCIL DOES NOT HAVE A LEGALLY COGNIZABLE CLAIM AS TO ANY OF THE 4-1/2% EXTERNAL DEBT BONDS ................................ 6

POINT III  THE BONDS DO NOT PROVIDE ANY SECURITY INTERESTS AGAINST THE SINKING FUND ........................................................................ 7

POINT IV  MR. STANCIL'S CLAIMS ARE BARRED BY THE INDENTURE'S TERMS ................................................................................................................... 8

POINT V  EVEN ASSUMING ARGUENDO THAT MR. STANCIL HAS A CLAIM, AS A PERFECTED JUDGMENT CREDITOR CLAIM, PETITIONER'S CLAIM HAS PRIORITY OVER THE STANCIL CLAIM ................................ 10

CONCLUSION ....................................................................................................................... 13

# TABLE OF AUTHORITIES

**Federal Cases**

*In re Marceca,* 129 B.R. 369 (Bankr. S.D.N.Y. 1991) .................................................................. 10

*In re New Life Builders, Inc.*, 241 B.R. 507 (W.D.N.Y. 1999) ..................................................... 10

*Lary v. Republic of Cuba*,
  643 F. Supp. 194 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987) ........................... 7, 9, 10

*Rothenberg v. Chloe Foods Corp.*,
  No. CV-06-5712 (CPS), 2007 WL 2128376 (E.D.N.Y. 2007) ................................................. 11

*United States v. Talco Contractors, Inc.*,
  No. 93-CV-6389T, 1999 WL 500989 (W.D.N.Y., 1999) ......................................................... 11

**State Cases**

*Beef & Bison Breeders, Inc. v. Capitol Refrigeration Co.*,
  105 Misc. 2d 275 (Supr. Ct. Spec. Term Albany Co. 1980) ..................................................... 11

*Berkowitz v. Chavo Int'l, Inc.*,
  144 A.D.2d 263 (1st Dep't 1988) ............................................................................................. 11

**Federal Statutes**

28 U.S.C. § 1610 .............................................................................................................................. 1

**State Statutes**

N.Y. C.P.L.R. § 5202(a) ................................................................................................................ 10
N.Y. C.P.L.R. § 5225(b) .................................................................................................................. 1
N.Y. C.P.L.R. § 5234(b) ................................................................................................................ 11
N.Y. U.C.C. § 9-317 ...................................................................................................................... 11
N.Y. U.C.C. § 9-322 ...................................................................................................................... 11

**Federal Rules**

Fed. R. Civ. P. 69 ........................................................................................................................ 1, 3

**Federal Regulations**

31 C.F.R. § 515.201(b)(1) ............................................................................................................... 6
31 C.F.R. § 515.309 ........................................................................................................................ 6
31 C.F.R. § 515.20(a) ...................................................................................................................... 6

Petitioner Jeannette Fuller Hausler ("Petitioner" or "Hausler") respectively submits this memorandum in reply to filings made by Hugh E. Stancil in connection with the Petition for an order directing turnover of the amount reserved from the payment of the Sinking Fund addressed in this Court's Order of December 15, 2010, (Dkt No. 115). In particular, as directed by Order dated February 9, 2011, (Dkt No. 146), Petitioner hereby replies to, and moves to dismiss, the Interpleader answer belatedly mailed to the Court by Mr. Stancil on December 20, 2011.

## INTRODUCTION

This proceeding relates to the enforcement of an Order and Judgment of this Court, dated September 22, 2008, duly registering a judgment entered by the United States District Court for the Southern District of Florida, which granted full faith and credit to an Amended Final Judgment that the Eleventh Judicial District in and for Miami-Dade County, Florida, entered in favor of Petitioner and against Defendants-Judgment Debtors The Republic of Cuba, Fidel Castro Ruz, Raul Castro Ruz, and the Cuban Revolutionary Armed Forces (the "Judgment Debtors"), awarding total damages against the Judgment Debtors in the amount of $100,000,000.00 in compensatory damages and $300,000,000.00 in punitive damages, including interest at the rate of 9% per year from the date of entry of the judgment until satisfied, of which $97,929,585.32 of the compensatory damages and of which $300,000,000.00 of the punitive damages remains unsatisfied, not including interest accruing on and after the date of the judgment (the "Hausler Judgment").

In connection with the efforts of Petitioner to enforce that judgment, Petitioner commenced this proceeding pursuant to § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297; 116 Stat. 2337, codified at 28 U.S.C. § 1610 note, and pursuant to N.Y. C.P.L.R. § 5225(b), made applicable through Fed. R. Civ. P. 69, to enforce her judgment

1

against Judgment Debtors, and to compel garnishee/respondent JPMorgan Chase Bank, N.A. ("JPM Chase") to turn over to the United States Marshal certain funds held in the accounts specified below, in amounts not to exceed in the aggregate $99,000,000.00 plus accrued interest. These funds included an account identified by JPM Chase as Republic of Cuba Interest Account T7161 (Account No. 125259.1), with a balance of approximately $3,569,448.54 as of March 6, 2008, which is a sinking fund (hereinafter "the Sinking Fund") established to pay principal and interest on the Republic of Cuba's 4-1/2% Bonds of the External Debt of the Republic of Cuba, 1937-1977 (the "4-1/2% External Debt Bonds").

By Order dated November 5, 2010, this Court found that all prerequisites had been met in order to allow Petitioner's execution of her judgment against the Sinking Fund, and ordered turnover of most, but not all, of the balance of the Sinking Fund. As requested by Petitioner, this Court ordered that approximately $609,000 be reserved from the balance of the Sinking Fund until certain parties claiming to own the some of the 4-1/2% External Debt Bonds were provided sufficient time and opportunity to provide written notice of their claims to amounts in the Sinking Fund (and to provide specific information in support of their claims) and to appear in this Court by filing an answer to the interpleader filed by JPM Chase and served on them.

When none of the parties filed an answer to the interpleader by November 30, 2010 (as specified by this Court), Petitioner requested by letter that the Court issue an order directing payment of the balance of the reserve. The Court, thereafter, issued a turnover order for the balance of the reserve on December 15, 2010. Thereafter, Mr. Stancil purported to submit an answer to the interpleader by letter dated December 20, 2010, claiming to own a single share of

the 4-1/2% External Debt Bonds.[1] In addition, Fernando S. and Marianela Morejon Aran, who claimed to jointly own some of the 4-1/2% External Debt Bonds, moved by letter dated January 4, 2011, for reconsideration of the Order of December 15, 2010, and to direct that their interpleader answer be treated as timely filed. The Court granted their motion on January 10, 2011.

By filing dated January 19, 2011, Petitioner demonstrated that the Arans had failed to make the showings required by the Court to demonstrate that they have a legally cognizable or enforceable claim to any portion of the Sinking Fund and that, by any measure, Petitioner's right to satisfy her judgment by executing against the Sinking Fund takes precedence over any right that the Arans' could possibly claim. By Order dated January 26, 2011, (Dkt. No. 140), this Court held that the Arans' claim is "without merit," that the Arans had "failed to establish clear title and a perfected claim to the of the 4-1/2% External Debt Bonds at issue here," and that the Arans had failed to demonstrate either "a legally cognizable claim superior to Hausler's" or "an established grounds sufficient to reconsider the Court's December Order." *Id*. at 3. On these bases, the Court ordered that the Arans' motion for reconsideration be denied, their Interpleader answer be dismissed, and that the residual amounts of the Sinking Fund be turned over to Petitioner.

Now, the Court has directed a response to Mr. Stancil's interpleader answer. That answer and Mr. Stancil's prior response to the notice published by JPM Chase demonstrate that Mr. Stancil's "claim" is defective for the very same reasons that led this Court to dismiss the Arans' claim. Thus, consistent with the Order of January 26, 2011, this Court should dismiss Mr. Stancil's claim, grant judgment in favor of Petitioner, and confirm its order directing payment of

---

[1] Although the certificate of service states that Mr. Stancil served this firm with the document attached to the Court's February 9, 2011 Order, the package we received did not contain the first page captioned: "Answer to Interpleader Petition." A copy of the documents received by Petitioner are attached as Exhibit A.

3

the remaining reserved amounts of the Sinking Fund, as directed in the Order of December 15, 2010.

## ARGUMENT

### POINT I

### MR. STANCIL HAS FAILED TO COMPLY WITH THE REQUIREMENTS ESTABLISHED BY THIS COURT'S ORDER

In the Court Ordered Notice to All Persons or Entities Holding 4-1/2% Bonds of the External Debt of the Republic of Cuba 1937-1977 (the "4-1/2% External Debt Bonds"), this Court required:

> Any party who is such a holder of the 4-1/2% External Debt Bonds must give notice of an intention to assert such a claim on or before October 31, 2010 by submitting a notice of claim to the counsel identified below which provides the following information:
>
> (a) the principal amount of the 4-1/2% External Debt Bonds held, together with copies of such Bonds;
>
> (b) the date on which each of such 4-1/2% External Debt Bonds was acquired, and the manner in which the Bonds were acquired; and
>
> (c) any steps taken to redeem your Bonds or to perfect your claim, whether pursuant to the filing of a claim with the Foreign Claims Settlement Commission, or otherwise.

Notice to All Persons or Entities Holding 4-1/2% Bonds of the External Debt of the Republic of Cuba 1937-1977 (the "4-1/2% External Debt Bonds"), Dkt. No. 78, Exhibit A (filed Aug. 13, 2010). *See also* Dkt. No. 97 (proof of publication of the Court-Ordered Notice).

Mr. Stancil has failed to comply with the requirements set out in the notice.

**1.   Mr. Stancil Has Failed to Prove That He Holds 4-1/2% External Debt Bonds and Has Failed to Produce Copies of the Bonds as Required by the Court's Order and Notice**

Paragraph (a) of the Court Ordered Notice required Mr. Stancil to notify Counsel for Petitioner of "the principal amount of the 4-1/2% External Debt Bonds held, together with copies

4

of such Bonds." As of the date of this filing, Mr. Stancil has still failed to provide proof that he holds any bonds that are related to the Sinking Fund at issue in the present proceeding, *i.e.*, 4-1/2% External Debt Bonds of the Republic of Cuba; and also failed to produce copies of the bonds he claims to own. Thus, he has failed to comply with the Court's requirements contained in the Notice.

In his Answer to the Interpleader Petition filed by JPM Chase, Mr. Stancil admits that the "4-1/2% External Debt Bonds of the Republic of Cuba" to which he now claims ownership "were issued in bearer form," requiring possession for enforcement in any case. *See* Stancil Answer to the Interpleader Petition at paragraph 3 (admitting the allegations set forth in Interpleader Petition paragraph 13). Likewise, in his letter to Counsel, dated October 20, 2010, and attached as Exhibit B, Mr. Stancil concedes that the 4-1/2% External Debt Bonds to which he now claims ownership were issued in bearer form ("I hereby assert a claim to the 4-½ Bearer Bonds of the External Debt of the Republic of Cuba").

Because these bonds were issued in bearer form, Mr. Stancil cannot demonstrate ownership without possession. Having failed to produce copies of the bonds, Mr. Stancil has failed to prove any basis upon which he can claim any right by way of ownership of these bonds.

For these reasons, Mr. Stancil has failed to properly state and prove his claim in accordance with this Court's prior Order and accordingly his claim is barred, and cannot serve as any basis to impede Petitioner's final execution against the Sinking Fund.

> 2. **Mr. Stancil Has Failed to Identify the Date on and Manner in Which Each of the Bonds Associated With Their Claim Were Acquired as Required by the Court's Order and Notice**

Paragraph (b) of the Court Ordered Notice required Mr. Stancil to notify Counsel for Petitioner of "the date on which each of such 4-1/2% External Debt Bonds was acquired, and the

manner in which the Bonds were acquired." As of the date of this filing, Mr. Stancil has merely asserted that the bonds "were acquired in 1964." *See* Exhibit B. Putting aside the lack of specificity as to the date of acquisition, Mr. Stancil has failed to indicate who acquired them or the manner in which they were acquired. In particular, just as in the case of the claims by the Arans, Mr. Stancil has failed to indicate whether the bond(s) were acquired, for example, by gift or for value received.

For these reasons, Mr. Stancil has failed to properly state and prove his claim in accordance with this Court's prior Order and accordingly his claim is barred, and cannot serve as any basis to impede Petitioner's execution against the Sinking Fund.

## POINT II

### MR. STANCIL DOES NOT HAVE A LEGALLY COGNIZABLE CLAIM AS TO ANY OF THE 4-1/2% EXTERNAL DEBT BONDS

Furthermore, as a matter of law, Mr. Stancil does not have a legally cognizable claim as to any of the 4-1/2% External Debt Bonds, and therefore has no standing to claim any interest in the Sinking Fund, under any circumstances.

As Mr. Stancil asserts in his letter of October 20, 2010, he claims that the bond was acquired in 1964. Under governing regulations issued by the Office of Foreign Asset Control ("OFAC"), as codified by the Libertad Act, title or any other ownership interest in these assets may not be transferred at any time after the regulations went into effect in 1963, whether by gift, for value received, or otherwise. *See* 31 C.F.R. § 515.201(b)(1) (prohibiting transfers of evidence of indebtedness of Cuba); § 515.309 (defining "transfer" to include "gift"). In accordance with Section 203 of those regulations, § 515.203(a), this purported transfer – which allegedly occurred *after* the regulations went into effect – is therefore "null and void and shall not be the basis for the assertion or recognition of any right, remedy power, or privilege with

respect to, or interest in" the blocked property embodied in the 4-1/2% External Debt Bonds. *See Lary v. Republic of Cuba*, 643 F. Supp. 194, 196 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987).

Nor has Mr. Stancil asserted any legally cognizable basis to circumvent the effect of these regulations. To the contrary, in his Answer to the Interpleader Petition, Mr. Stancil admits the allegations in the Interpleader Petition that the only claimants to whom the Interpleader was directed and who may have a claim to the Sinking Fund were "holders of the 4-1/2% External debt Bonds who acquired such Bonds prior to June 8, 1963, or who acquired such Bonds pursuant to a validly-issued license or by operation of law subsequent to that date." *See* Stancil Answer to Interpleader at paragraph 3 (admitting the allegations contained in Interpleader Petition paragraphs 4 and 12). Mr. Stancil does not claim to have obtained any such license. Accordingly, as demonstrated above, Mr. Stancil admits that he has no legally cognizable claim to the Sinking Fund.

For these reasons, as a matter of law, Mr. Stancil's claim as to these bonds is barred, and cannot serve as any basis to impede Petitioner's execution against the Sinking Fund.

## POINT III

### THE BONDS DO NOT PROVIDE ANY SECURITY INTERESTS AGAINST THE SINKING FUND

Moreover, contrary to the implications in Mr. Stancil's papers (as was also true of the Arans' motion papers), the owners of the 4-1/2% External Debt Bonds are **not** entitled to claim to have, and do not have, a secured interest in the Sinking Fund. As Petitioner previously demonstrated in connection with the Arans' motion, the indenture produced to Petitioner by JPM Chase provides that the owners of the 4-1/2% External Debt Bonds do have a lien to secure payment of the bonds, but that lien applies **not to the Sinking Fund,** but to 90 percent of Cuba's

7

tax revenues, as defined in the indenture. *See* Indenture Agreement ¶ 14. The indenture did not specify that any bondholder had any interest of any specific type in the Sinking Fund created thereunder. A copy of this indenture was attached to Petitioner's Reply to the Arans' Motion Exhibit C, (Dkt. No. 132). Therefore, the claims of the owners of the 4-1/2% External Debt Bonds have no connection to the Sinking Fund in any respect.

For this reason, as a matter of law, even if Mr. Stancil could demonstrate that he owned any of the 4-1/2% External Debt Bonds, this would not serve as any basis to impede Petitioner's execution against the Sinking Fund.

## POINT IV

## MR. STANCIL'S CLAIMS ARE BARRED BY THE INDENTURE'S TERMS

Fourth, under the terms of the indenture, the bond holders were required to present the bonds for redemption by 1977:

> Any Bonds outstanding on the final due date, that is to say June 30, 1977, which may not have been purchased and retired or redeemed in accordance with the preceding Articles, shall be paid by the Agent to the extent of funds in its hands for that purpose on their presentation on their due date, in full if such funds suffice therefor, otherwise pro rata.

*Indenture Agreement* ¶ 21. Accordingly, prior to the final due date, any unused funds in the Sinking Fund – and any interest paid by Manufacturers Hanover on those funds – would be used to repurchase and retire any outstanding bonds, **for the title and benefit of Cuba**, and without any right in the bond holders to affect Cuba's use of these funds in this manner. *Id.* And, under the explicit terms of the indenture, any and all funds in the Sinking Fund – including all accrued interest thereon – would be returned to Cuba six years after the 1977 redemption date, in 1983, whether or not any of the bondholders had been paid; in full, in part, or even at all:

> Six years after the due date of any interest coupon the Agent shall return to the Republic the amounts held for the payment of such interest coupons due on that

8

> date which shall not have been presented for payment. Similarly, six years after each redemption date, the Agent shall return to the Republic the amounts corresponding to those bonds called for redemption on that date, which shall not have been presented for payment, and six years after June 30, 1977, the Agent shall return to the Republic the amounts corresponding to the remaining Bonds which, not having been redeemed nor purchased, should have been paid on June 30, 1977 and shall not have been presented for payment.

Id. ¶ 25.

Mr. Stancil admitted in his October 20, 2010 letter that he took no steps to enforce any right he may now be claiming, and therefore failed to take any such action within the mandatory timeframe set out in the Indenture. Nor can Mr. Stancil claim any right to rely upon any action taken by either the predecessor owner of his bond or any other purported owner of any of the 4-1/2% External Debt Bonds. In discovery, JPM Chase has not identified any records indicating that any bond holder ever presented a claim to Manufacturers Hanover or its successor in interest (or sought a license from OFAC) prior to the claim date in 1977 or even the mandatory return date in 1983. This fact was reinforced by Cuba itself, which through Cuba's long-time counsel in the *Lary* case – a case involving the very indenture at issue here – indicated that there is no record that any of the owners of the 4-1/2% External Debt Bonds ever brought a claim to enforce the bonds in accordance with their terms.

Indeed, as reflected in the Sworn Statement of Michael Krinsky, filed in an earlier proceeding in *Lary v. Republic of Cuba*, there is no record that any of the owners of the 4-1/2% External Debt Bonds has ever brought a claim to enforce the bonds in accordance with their terms. As Mr. Krinsky stated:

> My firm has represented the Republic of Cuba and its agencies and instrumentalities in all matters concerning the United States for the last twenty-five years.… To our knowledge, this [*i.e.*, the *Lary* case] is the first action brought on these bonds despite the passage of twenty-five years since the Republic of Cuba's last payment on them in 1960 and 1961.

9

Sworn Statement of Michael Krinsky, filed in District of Columbia Civ. Action No. 86.0028 (dated January 7, 1986) available in the record in *Lary v. Republic of Cuba*, 643 F. Supp. 194 (S.D.N.Y. 1986) (Sweet, D.J.), *aff'd*, 814 F.2d 653 (2d Cir. 1987) and attached as Exhibit C to the Joint Submission Regarding the Tranche 2 Turnover Petition at Dkt. No. 44-3.

Thus, by 1983, the terms of the indenture would have operated to eliminate any claim by any person other than Cuba – including any owner of any of the 4 ½% External Debt Bonds – to any interest in the Sinking Fund.  For this reason, as a matter of law, even if Mr. Stancil could demonstrate that he owned any of the 4-1/2% External Debt Bonds, this would not serve as any basis to impede Petitioner's execution against the Sinking Fund.  To the contrary, under TRIA, Petitioner has a legally enforceable right to execute against these funds, which are unqualifiedly owned by Cuba.  *See* TRIA § 201(a).

**POINT V**

**EVEN ASSUMING ARGUENDO THAT MR. STANCIL
HAS A CLAIM, AS A PERFECTED JUDGMENT CREDITOR CLAIM,
PETITIONER'S CLAIM HAS PRIORITY OVER THE STANCIL CLAIM**

Fifth, even assuming that Mr. Stancil could overcome all of the foregoing impediments to his claim to an interest in the Sinking Fund *and* could demonstrate that New York law has any relevance in determining the priority of claims to the Fund, the Petitioner's claim (based on her status as a judgment creditor) would still take priority over Mr. Stancil's claim, since Mr. Stancil's claim is unsecured.  Under New York creditor's rights laws, a creditor who has levied on the assets of a debtor perfects its lien when it delivers a writ of execution to the sheriff or marshal.  *In re New Life Builders, Inc.,* 241 B.R. 507, 509 (W.D.N.Y. 1999)("[A] lien is obtained upon the personal property of the judgment debtor, except upon such property as is exempt, when the execution has been actually delivered to the sheriff to be executed.")(citing *In re Marceca,* 129 B.R. 369, 370 (Bankr. S.D.N.Y. 1991)).  *See also* C.P.L.R. 5202(a)(providing for

execution creditor's priority rights over transferee); § 5234(b)(providing execution creditor filing execution with Marshal has priority of other creditors filing later in time).  Here, Petitioner's lien was, therefore, perfected no later than March 27, 2009, when Petitioner delivered the writ of execution to the Marshal.  *See* Tranche II Petition, Exhibit B, Dkt. No. 29-4.

In comparison and contrary to the express terms of the indenture creating the Sinking Fund, at best, Mr. Stancil has an unperfected security interest in the monies in the Sinking Fund, as he neither filed a UCC-1 financing statement nor holds such funds.  *United States v. Talco Contractors, Inc.,* No. 93-CV-6389T, 1999 WL 500989, at *3 (W.D.N.Y., 1999) (holding failure to file financing statement under U.C.C. Article 9 for security interest in general intangibles results in unperfected security interest, subject to rights of other lien creditors); *Beef & Bison Breeders, Inc. v. Capitol Refrigeration Co.,* 105 Misc. 2d 275, 277 (Supr. Ct. Spec. Term Albany Co. 1980)(holding that failure to file proper financing statement results in unperfected security interest, subject to priority rights).  *See also* N.Y. U.C.C. §§ 9-317 and 9-322 (providing that perfected judgment lien has priority over unperfected security interest); *Rothenberg v. Chloe Foods Corp.,* No. CV-06-5712 (CPS), 2007 WL 2128376, at *12 (E.D.N.Y. 2007)("if a bank takes a security interest in the debtor's equipment but fails to file a financing statement or to take possession, and an unsecured creditor levies against the property and so procures a judicial lien on it, this formerly unsecured creditor (now a "lien creditor") will defeat the prior unperfected secured creditor); *Berkowitz v. Chavo Int'l, Inc.,* 144 A.D.2d 263, 263-64 (1st Dep't 1988)(holding levying judgment creditor has priority over unperfected secured creditor).

Thus, even assuming Mr. Stancil had a secured interest in Sinking Fund assets, he would be second in line to Petitioner.  Since the amounts in the Sinking Fund do not satisfy Petitioner's judgment, Mr. Stancil is not permitted a recovery here.  Accordingly, under TRIA, the Petitioner

has an unqualified right to enforce her judgment against the Sinking Fund, irrespective of the claims by Mr. Stancil.

## CONCLUSION

In sum, Petitioner submits that there is no basis for Mr. Stancil to contest the right of the Petitioner to the funds held in the name of the Republic of Cuba which were deposited with JPMorgan Chase's predecessor as the Sinking Fund. Just as was true of the claims made by the Arans (which were dismissed by Order of this Court), Mr. Stancil's claim is "without merit," Mr. Stancil has "failed to establish clear title and a perfected claim to the of the 4-1/2% External Debt Bonds at issue here", and Mr. Stancil has failed to demonstrate either a legally cognizable claim superior to the Petitioner's or an established grounds sufficient to reconsider the Court's December Order. *Id.* at 3. For these same reasons, Petitioner submits that, just as in connection with the claim by the Arans, this Court should dismiss Mr. Stancil's Interpleader Answer and order that the residual amounts of the Sinking Fund be turned over to Petitioner.

Dated: New York, New York
February 11, 2011

GREENBERG TRAURIG, LLP

By: _____
James W. Perkins
Bryn K. Haffey
*Attorneys for Petitioner*
200 Park Avenue, 38th Floor
New York, New York 10166
Phone: (212) 801-9200
Fax:     (212) 801-6400

COLSON HICKS EIDSON
Roberto Martinez
Ronald W. Kleinman
255 Aragon Avenue
Second Floor
Coral Gables, Florida 33134
Phone: (305) 476-7400
Fax:     (305) 476-7444

GREENBERG TRAURIG, LLP
David A. Baron
2101 L Street, N.W.,
Suite 1000
Washington DC 20037
Phone: (202) 331-3100
Fax:     (202) 331-3101