New York   Madrid
Menlo Park   Tokyo
Washington DC   Beijing
London   Hong Kong
Paris

# Davis Polk

**James L. Kerr**

Davis Polk & Wardwell LLP   212 450 4552 tel
450 Lexington Avenue   212 701 5552 fax
New York, NY 10017   james.kerr@davispolk.com

RECEIVED FEB 15 2011 CHAMBERS OF JUDGE MARRERO

February 14, 2011

Re:   Jeanette Fuller Hausler, et al. v. JPMorgan Chase Bank, N.A., et al.
      No. 09 Civ. 10289 (VM)

Hon. Victor Marrero, U.S.D.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-18-11

Dear Judge Marrero:

This firm represents Citibank, N.A. ("Citibank"), one of the Garnishee-Respondents and Third-Party Petitioners in the above-captioned case. I write in response to Petitioner's letter brief of February 7, 2011, which requests in effect entry of a default judgment against Shanghai Pudong Development Bank Co. Ltd. ("Shanghai Pudong") by means of an immediate turnover of all remaining funds subject to Petitioner's Tranche I Turnover Petition. Shanghai Pudong is one of the Adverse Claimants-Respondents named in the Joint Third-Party Petition Alleging Claims in the Nature of Interpleader filed by Citibank and JPMorgan Chase Bank, N.A. on April 21, 2010 ("Third-Party Petition"). The funds in question consist of the proceeds of a wire transfer in which Shanghai Pudong served as the originating bank, and are held in a blocked, interest-bearing account that is maintained on the books of Citibank.

Citibank opposes the immediate entry of Petitioner's proposed turnover order. At the present time, we have no way of knowing whether Shanghai Pudong has received notice of these proceedings or service of the Third-Party Petition despite diligent efforts by Citibank to effect service pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, 20 U.S.T. 361, 658 U.N.T.S. 163 ("Hague Convention"). This fact alone should be sufficient to preclude entry of the turnover order.

Although more than six months have elapsed since Citibank initiated service, we have been advised by Process Forwarding International ("PFI")—the organization that acts for the United States Department of Justice ("DOJ") in its capacity as the United States Central Authority under the Hague Convention—that service of process in the People's Republic of China ("China") typically takes between six and twelve months.[1] In response to an inquiry on behalf of Citibank, the Chinese Central Authority has advised PFI that the Third-Party Petition and summons have

---

[1] The declaration of Mr. Rick Hamilton, the Director of Operations for PFI, confirming the six-to-twelve month window, is attached hereto as Exhibit A (the "Hamilton Declaration").

been forwarded to a local court for service on Shanghai Pudong. The Chinese Central Authority has also been advised of Petitioner's application for a default, and PFI has requested an update on the status of service. Under these circumstances, we believe it would be entirely appropriate to allow some additional time for the Chinese Central Authority to determine whether the local Chinese court has completed service.

Should the Court decide not to permit the completion or confirmation of service in the ordinary course pursuant to the Hague Convention, Citibank respectfully requests that the Court authorize supplemental service of process upon Shanghai Pudong by private international courier pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure. Supplemental service of process before ordering turnover would guarantee that Shanghai Pudong has received notice of the pending turnover and been given an opportunity to defend. The course sought by Petitioner—ordering turnover without notice to an adverse claimant—would be Constitutionally infirm and would undermine the purpose of the Third-Party Petition, which was to avoid future claims against Citibank by notifying potential claimants of Petitioner's execution application.

### The Blocked Wire Transfer and Efforts to Serve Shanghai Pudong

The funds targeted for turnover in Petitioner's proposed order are the proceeds of a wire transfer initiated in September 2001 in the amount of $1,957,183.84. Banco Nacional de Cuba, which may be deemed to be in default, was the originator of the wire transfer; Shanghai Pudong was the originating bank; and Citibank was the intermediary bank. Citibank debited proceeds of the wire transfer from the account of Shanghai Pudong and placed the finds into a blocked, interest-bearing account pursuant to OFAC regulations, where they remain today.

Following the filing of the Third-Party Petition, Citibank initiated service on Shanghai Pudong pursuant to Article 3 of the Hague Convention.[2] PFI sent a copy of the summons and Third-Party Petition together with a translated copy of each via FedEx to the Chinese Central Authority for service on Shanghai Pudong at its headquarters in Shanghai.[3] During the months following the dispatch of service, we made numerous inquiries of PFI concerning the status of service on Shanghai Pudong. We were initially informed that service in China would take at least six months. As indicated in the Hamilton Declaration, which is attached hereto as Exhibit A, service in China typically takes between six and twelve months.

As of the end of 2010, neither Citibank nor PFI had received confirmation from the Chinese Central Authority that the summons and Third-Party Petition had been served on Shanghai Pudong. Accordingly, on January 4, 2011, we asked Mr. Hamilton to request a service update. The Chinese Central Authority replied to Mr. Hamilton in an email that it had forwarded the service request to a Chinese court in Shanghai to arrange service on May 20, 2010 and had not since received a response from that court. On January 14, 2011, when Petitioner indicated it

---

[2] Article 3 of the Hague Convention provides, in relevant part:

> The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality.

[3] According to a tracking report available on the FedEx website, the package was sent to the Chinese Central Authority on May 12, 2010 and arrived in Beijing on May 17, 2010. A copy of the FedEx tracking report is attached hereto as Exhibit B. A copy of an internal tracking report from PFI, providing a FedEx tracking number, is attached hereto as Exhibit C.

was about to file a motion for default under Article 15 of the Hague Convention, we asked Mr. Hamilton to again contact the Chinese Central Authority for an update on whether service had been effected. A copy of Mr. Hamilton's email correspondence with the Chinese Central Authority through January 14, 2011 is attached hereto as Exhibit D. In addition, following receipt of Petitioners' February 7, 2011 letter to Your Honor, we asked Mr. Hamilton to forward that letter to the Chinese Central Authority and to request an update on the status of service. As of today, PFI has not received a response from the Chinese Central Authority. A copy of Mr. Hamilton's email dated February 9, 2011 is attached hereto as Exhibit E.

Completion of Primary Service and Order for Supplemental Service if Needed

Petitioner requests that this Court order Citibank to turn over forthwith all remaining Tranche I assets—the blocked proceeds of the Shanghai Pudong wire transfer—to the U.S. Marshal. The basis for Petitioner's request is that Article 15 of the Hague Convention permits a court in the United States to enter judgment without confirmation of service if three minimum requirements have been met: (a) process was transmitted to in a manner permitted under the Hague Convention, (b) "not less than six months" have elapsed since service was initiated, and (c) reasonable efforts have been made to obtain a certificate through a foreign central authority. Hague Convention, Art. 15 ¶ 2.

While all three conditions may have been met in this case, six months is not a deadline but a datum before which a default judgment may not be entered.[4] Accordingly, while this Court may have the discretion to enter judgment pursuant to Article 15 of the Hague Convention, we would submit that the Court's discretion can be most soundly exercised by ensuring that Shanghai Pudong receives notice of the turnover proceeding in an objectively verifiable matter. We believe this consideration is particularly important here because the time elapsed to date is within the norm for service in China even though it is beyond the six months referred to in Article 15.

If the Court is not inclined to let service through the Chinese Central Authority take its course, we believe that an alternate, supplemental method of service would be appropriate. Under Rule 4(f)(3) of the Federal Rules of Civil Procedure, a court may permit service upon an individual or a corporation "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). See United States v. Estate of Martin J. Machat, 08 Civ. 7936, 2009 U.S. Dist. LEXIS 87000, at *9 (S.D.N.Y. Sept. 21, 2009) (commenting that Rule 4(f)(3) provides "neither a last resort nor extraordinary relief"); SEC v. Shehyn, No. 04 Civ. 2003, 2008 U.S. Dist. LEXIS 108951, at *8-9 (S.D.N.Y. Nov. 26, 2008) (noting that Rule 4(f)(3) "adds flexibility by permitting the court by order to tailor the manner of service to fit the necessities of a

---

[4] Indeed, the first paragraph of Article 15 prohibits the entry of judgment in the absence of actual notice or delivery, and makes plain that actual notice and delivery are of paramount import:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that
> a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or
> b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,
> and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend. Hague Convention, Art. 15 ¶1 (emphases added).

particular case or the peculiar requirements of the law of the country in which the service is to be made").

Supplemental service on Shanghai Pudong by private international courier is not expressly prohibited by international agreement, and none of China's Declarations on file with the Hague Conference on Private International Law[5]—including its objection to primary service of process through "postal channels," Hague Convention, Art. 10(a)—would appear to preclude supplemental service by means of private international courier.[6]  Under the circumstances of the instant case, ordering supplemental service under to Rule 4(f)(3) before ordering turnover would provide significantly greater assurance to Citibank that a turnover order would not be vulnerable to collateral attack in the United States or in a foreign court.  Indeed, Rule 4(f)(3) covers this very situation:  "Other circumstances that might justify the use of additional methods [pursuant to Rule 4(f)(3)] include the failure of the foreign country's Central Authority to effect service within the six-month period provided by the Convention . . . ." Fed. R. Civ. P. 4(f)(3) advisory committee notes (1993 amendment) (emphasis added).  See also id. (observing that when "[a] signatory state [to the Hague Convention] was dilatory or refused to cooperate for substantive reasons[,] . . . resort may be had to the provision set forth in subdivision (f)(3).").  A proposed order is attached hereto as Exhibit F.

In addition, Article 15 of the Hague Convention expressly authorizes a judge to "order, in [the] case of urgency, any provisional or protective measures," Hague Convention, Art. 15 ¶3—a provision construed to permit special forms of service, see Fed. R. Civ. P. 4(f)(3) advisory committee notes (1993 amendment) ("The Hague [Service] Convention, for example, authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances. . . . In such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement.").  By reason of Petitioner's application, the current situation carries some degree of urgency.  As Petitioner observes, these proceedings have been stalled for eight months pending service on Shanghai Pudong in China.  If the Court is disinclined to let service pursuant to the Hague Convention run its course, ordering supplemental service by private international courier would fulfill Petitioner's goal of resolving the Tranche I petition expeditiously.

Moreover, supplemental service by private international courier under Rule 4(f)(3) would satisfy the minimum Constitutional guarantee that service of process be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them

---

[5] The Declarations of the People's Republic of China are available at:
http://www.hcch.net/index_en.php?act=status.comment&csid=393&disp=resdn.

[6] It is well-established that even if a state objects to service by "postal channels" under Article 10(a) of the Hague Convention, it is permissible to supplement service by mail or courier where primary service through a central authority has already been attempted.  See Report on the Work of the Special Commission on the Operation of the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 17 I.L.M. 312, 327 (1977) ("For those States which objected to [service through postal] channel[s], a distinction was made between use of the postal channel as the sole method of service and service through the postal channel which was complementary to another means of effecting service. In this latter case, postal transmission of the judicial document should not be considered as being an infringement on the sovereignty of the State addressed."); Christophe Bernasconi and Laurence Thébault, Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, § 205 (3d ed. 2006) ("An objection to postal channels as a means of service does not extend to a situation where the postal channels are used as a mere supplement to another form of service.").

an opportunity to present their objections." Mullane v. Central Hannover Bank & Trust Co., 339 U.S. 306, 314 (1950). As the record stands, there is simply no indication that Shanghai Pudong has received notice of this action. A receipted delivery of the summons and Third-Party Petition—easily and reliably accomplished through private international courier—is a reasonable method of providing notice because it satisfies both (a) Petitioner's interest in an expedient resolution of Tranche I, and (b) Citibank's interest in providing notice in advance of a discharge in interpleader. Neither Petitioner nor Citibank will be unduly prejudiced by waiting a short additional period of time.

Petitioner's Arguments do not Support her Request for Immediate Turnover

Petitioner argues, in essence, that this Court should enter its proposed turnover order because the minimum requirements for a default judgment under Article 15 have been met. However, those minimum requirements merely give a court the discretion to enter a default judgment; they do not require a court to do so. Indeed, the second paragraph of Article 15 does not provide any guidance on when, after "not less than six months" have elapsed, a default judgment should be entered. Hague Convention, Art. 15 ¶ 2. The second paragraph of Article 15 merely establishes the minimum requirements that must be met before a default judgment may be entered. But just because this Court has the power to enter a default judgment does not mean that such an extreme measure is warranted in this case. Petitioner has not provided affirmative, specific reasons why this Court should in effect enter judgment against Shanghai Pudong.

Petitioner's brief also omits any discussion of the first paragraph of Article 15, which establishes a general presumption against the entry of judgment before service is confirmed and in favor of permitting "sufficient time to enable the defendant to defend." Hague Convention, Art. 15, ¶1. There is no indication whatsoever that Shanghai Pudong has attempted to dodge service or has otherwise acted in bad faith. Indeed, there is no evidence that Shanghai Pudong could have received notice of this litigation. Notwithstanding the failure of the Chinese Central Authority and the Chinese courts to forward process and return a confirmation of service within six months, Citibank and Shanghai Pudong should be entitled to the actual notice guaranteed by the first paragraph of Article 15.

Only one case cited by Petitioner addresses the question presented in the instant case: when should a court exercise its discretion under Article 15 of the Hague Convention and enter judgment against a party that has not been served? See Thomas v. Biocine Sclavo, S.P.A., No. 94-CV-1568, 1998 U.S. Dist. LEXIS 1420 (N.D.N.Y. Feb. 4, 1998). However, that case is easily distinguishable on its facts. Over two years had passed since the plaintiff in Thomas first attempted service under the Hague Convention, and the plaintiff had tried to serve the defendants using three different means of service before seeking a default judgment. See Thomas v. Biocine Sclavo, S.P.A., No. 94-CV-1568, 1997 U.S. Dist. LEXIS 21865, at *2-5 (N.D.N.Y. July 1, 1997) (Hurd, Mag.). In the instant case, less than one year has elapsed since Citibank first attempted to serve process on Shanghai Pudong, and the Chinese Central Authority has recently been asked for a status update.[7]

---

[7] None of the other cases cited by Petitioner are remotely on point. In Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 697, 707 (1988), the Supreme Court held that service on a domestic subsidiary of a foreign corporation is sufficient to effect service upon the foreign corporation if such service is valid under state law and the Due Process Clause. The Court's opinion does not in any way address the entry of a default judgment under Article 15 in the absence of any confirmation of service. In Burda Media, Inc. v. Viertel, 417 F.3d

* * *

This is not a typical situation under Article 15 where a plaintiff with a damages claim is seeking to enter judgment against a tortfeasor or a counterparty who has breached a contract. Citibank is a stakeholder seeking to avoid double liability. Shanghai Pudong is a stranger to the Petitioner, who is seeking to seize funds taken from Shanghai Pudong's account in order to execute a judgment—not against Shanghai Pudong, but against Cuba. Petitioner has been harmed by Cuba, not by either Citibank or Shanghai Pudong, and there would thus appear to be no reason whatsoever to rush to a judgment against Shanghai Pudong that leaves Citibank exposed.

Citibank filed the joint Third-Party Petition to give it assurance that any turnover judgment issued in the above-captioned proceeding would protect Citibank from a future lawsuit by potential claimants to the assets subject to execution. This assurance can be accomplished only by giving potential claimants notice of the pending proceeding and an opportunity to be heard. As indicated above, there is no reason to believe that Shanghai Pudong has been served with the summons and Third-Party Petition. Without notice of Petitioner's turnover proceeding, any turnover order involving funds to which Shanghai Pudong may have a claim may be vulnerable to collateral attack in the United States or in a foreign court, undermining the very purpose of the interpleader proceeding initiated and made subject to service pursuant to the Hague Convention.

For all these reasons, Citibank respectfully requests that this Court hold Petitioner's proposed turnover order in abeyance pending (a) the completion of service and the receipt of a certificate of service pursuant to the Hague Convention, or (b) an order for supplemental service of process by private international courier upon Shanghai Pudong pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure.

Very respectfully yours,

James L. Kerr

cc:   Counsel for Petitioner (by email)

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Garnishee-Respondent Citibank.
>
> SO ORDERED.
>
> 2-15-11
> DATE           VICTOR MARRERO, U.S.D.J.

---

292 (2d Cir. 2005), the question presented was whether two police reports were adequate substitutes for a certificate of service from the relevant central authority. The Court of Appeals held that the two police reports showed that process had been served, and so never addressed the merits of a default judgment where there is no indication that process had been served. Id. at 302. In John Galliano, S.A. v. Stallion, Inc., 15 N.Y.3d 75, 82 (2010), the New York Court of Appeals only relied on the first paragraph of Article 15 because, in that case, service had been effected. Therefore, there was no need to address the second paragraph of Article 15. Finally, in Daly v. Llanes, 98 Civ. 1196, 1999 U.S. Dist. LEXIS 18399, at *4-6 (S.D.N.Y. Nov. 24, 1999), the defendant against whom plaintiff sought a default judgment had actual notice of the litigation and, indeed, appeared to argue that service was improper. Under those circumstances, the court denied plaintiff's motion for a default judgment under Article 15, which was made solely because a certificate of service had not been returned by a foreign Central Authority within six months.