UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |
|---|---|
| JEANNETTE HAUSLER, | ) |
|  | ) |
|  | ) Civil Action No. 09 Civ. 10289 (VM) |
|  | ) |
| *Plaintiff-Petitioner*, | ) |
|  | ) |
| v. | ) RE: Fidel Castro Ruz, Raul Castro Ruz, |
|  | ) The Republic of Cuba, and |
| JP MORGAN CHASE BANK, N.A, | ) The Cuban Revolutionary Armed Forces |
| CITIBANK, N.A., THE ROYAL BANK | ) [JUDGMENT DEBTORS] |
| OF SCOTLAND N.V. (FORMERLY | ) |
| KNOWN AS ABN AMRO, N.V.), and | ) |
| NATIONAL BANK OF CANADA, | ) |
|  | ) |
| *Garnishees-Respondents*. | ) |
|  | ) |

_____

## ANSWER OF GARNISHEE-RESPONDENT NATIONAL BANK OF CANADA TO THE PETITION FOR TURNOVER ORDER

Garnishee-Respondent National Bank of Canada ("NBC" or "Respondent"), by its attorneys White & Case LLP, alleges as follows for its Answer to Plaintiff's Petition for Turnover Order Pursuant to Federal Rule of Civil Procedure Rule 69 and N.Y. C.P.L.R. § 5225(b) insofar as it is directed to National Bank of Canada ("Turnover Petition"). Unless otherwise indicated, all references to paragraph numbers herein are to the numbered paragraphs in the Turnover Petition:

### AS TO THE NATURE OF THE PROCEEDING

1. Denies the allegations contained in paragraph 1, except admits that Petitioner purports to bring this proceeding pursuant to Section 201 of the Terrorism Risk Insurance Act of 2002, Pub. L. 107-297, Title II, § 201, Nov. 26, 2002, 116 Stat. 2337, codified at 28 U.S.C. § 1610 note ("TRIA"), as well as pursuant to N.Y. C.P.L.R. § 5225(b), made applicable to this

proceeding pursuant to Fed. R. Civ. P. 69, for an order compelling Respondent, as garnishee, to turn over to Petitioner certain funds that are listed in Exhibit D to the Turnover Petition ("Blocked Funds") and/or the property interests of the Judgment Debtors or any agency or instrumentality of a Judgment Debtor in those Blocked Funds, which Blocked Funds are alleged to be subject to a writ of execution issued on or about March 26, 2009 ("Writ of Execution"), purportedly in aid of enforcement of the Judgment and the Florida Judgment referred to in paragraph 1.  Respondent refers to the Writ of Execution and to the Judgment and Florida Judgment referred to in paragraph 1 for their respective terms, conditions and effect.  To the extent the allegations contained in paragraph 1 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied.

2. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 2, except that Respondent admits that on or about May 12, 2009, the U.S. Marshal served Respondent in New York with the Writ of Execution, and refers to the Writ of Execution for the terms, conditions and effect thereof. Respondent denies the allegations contained in the second and third sentences of paragraph 2. Although Respondent's New York branch holds property blocked pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515 (the "CACRs"), Respondent does not know who is entitled to that property.  Moreover, to the extent Respondent's New York branch holds property and/or property interests of the Republic of Cuba or any of its agencies or instrumentalities that may be subject to turnover pursuant to TRIA, the CACRs prevent such turnover in the absence of a license issued by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") or a court order.  Respondent admits that Petitioner seeks to compel Respondent to

turn over the Blocked Funds that are listed in Exhibit D to the Turnover Petition, and Respondent alleges that such Blocked Funds are subject to the CACRs referred to above, and are or may be subject as well in whole or in part to provisions of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq. (the "FSIA").  Respondent admits the allegations contained in the fourth sentence of paragraph 2.  In respect of the Blocked Funds listed in Exhibit D to the Turnover Petition, to the extent the allegations contained in paragraph 2 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied.

3. Denies the allegations contained in paragraph 3, except admits that Petitioner seeks to compel the turnover of the Blocked Funds listed in Exhibit D to the Turnover Petition. To the extent the allegations in paragraph 3 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied. Respondent refers to TRIA § 201(a) cited in paragraph 3 for the terms, conditions and effect thereof.

4. Denies the allegations contained in paragraph 4, except admits that Petitioner seeks an order requiring the Respondent to turn over the Blocked Funds listed in Exhibit D to the Turnover Petition.  To the extent the allegations contained in paragraph 4 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied.

## AS TO JURISDICTION

5. Admits that the Court has jurisdiction over this proceeding.

6. Admits that venue is proper in this district.

**AS TO PARTIES**

7. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7, and refers to the Florida Judgment referred to in paragraph 7 for the terms, conditions and effect thereof. To the extent the allegations in paragraph 7 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied.

8. Denies the allegations contained in paragraph 8, except admits that NBC is a banking institution organized and existing under the laws of Canada with a branch office in New York, and further admits that NBC maintains accounts in New York, including accounts against which the Petitioner has directed the U.S. Marshal to serve the Writ of Execution and that are the subject of this Turnover Petition.

**AS TO BACKGROUND**

9. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9, and refers to the pleadings filed in the action that is cited in paragraph 9 for the terms, conditions and effect thereof. To the extent the allegations in paragraph 9 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied.

10. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10, and refers to the Florida Judgment cited in paragraph 10 for the terms, conditions and effect thereof. To the extent the allegations in paragraph 10 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied.

11. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11, and refers to the Florida Judgment, TRIA § 201(d)(4), and 50 U.S.C. App. 2405(j) cited in paragraph 11 for the terms, conditions and effect thereof. To the extent the allegations in paragraph 11 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied.

12. States that to the extent the allegations contained in paragraph 12 constitute legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied. Respondent refers to TRIA § 201(a) cited in paragraph 12 for the terms, conditions and effect thereof.

13. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13.

14. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14.

15. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15, and refers to the Florida Judgment cited in paragraph 15 for the terms, conditions and effect thereof. To the extent the allegations in paragraph 15 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied. Respondent refers to the July 28, 2008 and August 20, 2008 Orders cited in paragraph 15 for the terms, conditions and effects thereof.

16. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16. To the extent the allegations in paragraph 16 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied.

17. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17. To the extent the allegations in paragraph 17 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied. Respondent refers to the Writ of Execution cited in paragraph 17 for the terms, conditions and effect thereof.

18. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18, except admits that on or about May 12, 2009, the U.S. Marshal served the Writ of Execution upon Respondent in New York purporting to levy on property of the Republic of Cuba (including its agencies and instrumentalities), Fidel Castro Ruz, Raul Castro Ruz, and the Cuban Revolutionary Armed Forces. To the extent the allegations in Paragraph 18 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied. Respondent refers to the Writ of Execution cited in paragraph 18 for the terms, conditions and effect thereof.

19. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19, except admits that the U.S. Marshal served the Writ of Execution on Respondent in New York purporting to levy on property of the Republic of Cuba (including its agencies and instrumentalities), Fidel Castro Ruz, Raul Castro Ruz, and the Cuban Revolutionary Armed Forces. To the extent the allegations in Paragraph 19 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied. Respondent refers to the Writ of Execution cited in paragraph 18, and the laws and regulations cited in paragraph 19, for the terms, conditions and effect thereof.

20. Denies the allegations contained in paragraph 20, except admits that on or about October 19, 2010, Petitioner served an Information Subpoena on Respondent and on or about

December 1, 2010, Respondent served Petitioner with Respondent's Objections and Responses to the Information Subpoena.

## AS TO BLOCKED CUBAN FUNDS

21.     Respondent admits that it produced, in response to the Petitioner's Information Subpoena, the annual report it provided to OFAC in 2010, which reported on property blocked by Respondent pursuant to the CACRs for the period ending June 30, 2010, and further admits that Respondent's New York branch holds the principal amounts of the Blocked Funds listed in Exhibit D to the Turnover Petition in the first account referenced in paragraph 21 and the accumulated interest from, inter alia, these funds in the second account referenced in paragraph 21.  Respondent denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 that the Republic of Cuba and/or its agencies or instrumentalities have an interest in the blocked property referred to in paragraph 21.  To the extent that allegations contained in paragraph 21 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied.

## AS TO THE NEED FOR A TURNOVER ORDER

22.     Respondent admits that the Blocked Funds listed in Exhibit D to the Turnover Petition are blocked pursuant to the CACRs, and are or may be subject as well in whole or in part to provisions of the FSIA.  To the extent the allegations contained in paragraph 22 constitute legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied, and refers to the regulations cited in paragraph 22 for the terms, conditions and effect thereof.

23. Denies the allegations contained in paragraph 23, and refers to the July 13, 2009 letter from NBC's counsel to the U.S. Marshals Service that is attached as Exhibit B to the Turnover Petition for the reasons NBC is unable to release or turnover the Blocked Funds.

24. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 24, except refers to Paragraph 31 below for reference to certain entities that may have claims to the Blocked Funds which may be adverse and/or superior to Petitioner's claim. Respondent denies the allegations contained in the second sentence of paragraph 24, except it admits that at the time it responded to Petitioner's Information Subpoena it was continuing its search for documents or information disclosing the identity of any other person or entity having a claim to the Blocked Funds other than the entities listed in Exhibit C to the Turnover Petition. Respondent disclosed additional information to the Petitioner as to such persons on February 28, 2011. To the extent that allegations contained in paragraph 24 purport to set forth legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied.

25. Admits the allegations contained in paragraph 25.

26. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26.

27. Denies the allegations contained in paragraph 27. To the extent the allegations contained in paragraph 27 constitute legal conclusions or statements of law, Respondent need not respond to such allegations, which shall be deemed denied. Respondent refers to TRIA § 201 cited in paragraph 27 for the terms, conditions and effect thereof.

28. Denies the allegations contained in paragraph 28. To the extent the allegations contained in paragraph 28 constitute legal conclusions or statements of law, Respondent need not

respond to such allegations, which shall be deemed denied. Respondent refers to CPLR § 5225(b) cited in paragraph 28 for the terms, conditions and effect thereof.

29. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29.

## CLAIMS IN THE NATURE OF INTERPLEADER

30. Respondent repeats and realleges each and every response set forth in Paragraphs 1 through 29 above as if fully set forth herein.

31. Respondent alleges the existence of claims to the Blocked Funds listed in Exhibit D to the Turnover Petition that potentially are adverse and/or superior to Petitioner's claim, including claims by: the entities identified in Exhibit D to the Turnover Petition, unknown originators' and/or intermediary banks in the chain of wire transfers comprising the Blocked Funds, and the originators of the payments comprising the Blocked Funds ("Adverse Claimants"). As Respondent is a disinterested stakeholder with respect to the Blocked Funds listed in Exhibit D to the Turnover Petition and seeks to avoid the risk of inconsistent judgments and double or multiple liability, Respondent intends to file a Petition Alleging Claims In The Nature Of Interpleader (the "Interpleader Action") asserting claims in the nature of interpleader pursuant to Fed. R. Civ. P. 22, N.Y. C.P.L.R. § 5239, and New York Banking Law § 134, which Petition is incorporated herein by reference.

32. Such potentially adverse claims require the Adverse Claimants to be notified of the Turnover proceeding and Interpleader Action. Respondent alleges that notice of the Turnover proceeding and Interpleader Action to the known Adverse Claimants by direct service and to the unknown Adverse Claimants by publication in a form and manner prescribed by an order of this Court that is reasonably calculated to provide notice, is necessary to notify such

Adverse Claimants that the Turnover Petition if granted would prejudice any claims they might have to those funds. Such notice should be sufficient to satisfy the demands of Due Process and will bind future claimants who may assert claims to those funds against the Respondent.

33.    The Turnover Petition should be denied until such time as the Adverse Claimants have been given proper notice of the Turnover proceeding and Interpleader Action, and the Court has entered an order in the Interpleader Action as to the disposition of the Blocked Funds.

## **PRAYER FOR RELIEF**

34.    WHEREFORE, Garnishee-Respondent National Bank of Canada respectfully requests that the Court enter judgment determining in respect of each of Petitioner's claims for turnover:

(a) that notice to Adverse Claimants of the nature and effect of the turnover proceeding and Interpleader Action has been given in a manner reasonably calculated to give Adverse Claimants the opportunity to bring their claims to those Blocked Funds before the Court;

(b) that such notice is adequate to satisfy the demands of Due Process and permit the final and binding adjudication of the rights of any such Adverse Claimants in the Blocked Funds listed in Exhibit D to the Turnover Petition which are the subject of turnover;

(c) that service by NBC of its Petition Alleging Claims In The Nature Of Interpleader on the Adverse Claimants constituted good and sufficient service;

(d) the specific Blocked Funds listed in Exhibit D to the Turnover Petition that are subject to execution and turnover, if any, the amount of such Blocked Funds, if any, to be turned over pursuant to any execution or turnover order, and the identity of the party, if any, to whom such turnover is to be made;

(e) that the Blocked Funds against which turnover is ordered consist of the blocked property or the blocked deposits in the United States of the Republic of Cuba or an agency or instrumentality of the Republic of Cuba, and that TRIA allows the Blocked Funds to be executed against to satisfy a judgment against the Judgment Debtors for compensatory damages, irrespective of whether the Blocked Funds would otherwise be immune from attachment, attachment in aid of execution or execution;

(f) that each judgment as to which turnover is ordered is (i) against the Republic of Cuba as a terrorist party on a claim based on an act of terrorism within the meaning of TRIA, or (ii) based on a claim in respect of an act of terrorism for which a terrorist party is not immune under 28 U.S.C. § 1605A;

(g) that the amount of each judgment as to which turnover is ordered, including interest and any poundage, is solely for compensatory, not punitive, damages in respect of which the terrorist party has been adjudged liable inasmuch as TRIA § 201 (a) only permits execution upon blocked assets in aid of execution in order to satisfy judgments "to the extent of any compensatory damage for which [a] terrorist party has been adjudged liable";

(h) that, in respect of each judgment entered against a terrorist party by default, (i) a copy of such default judgment was sent to the foreign state in a manner provided by service by 28 U.S.C. § 1608(a) or (b) and (e), (ii) the Petitioner served the Judgment Debtors in accordance with 28 U.S.C. § 1608(a) or (b), as applicable, (iii) notice to the Judgment Debtors as required by 28 U.S.C. § 1610(e) was given; and (iv) a reasonable period of time has elapsed following the entry of said judgments as required by 28 U.S.C. § 1610(c);

(i) that, to the extent TRIA is not relied upon, the Blocked Funds against which turnover is ordered consist of blocked property of a Judgment Debtor or property in which a Judgment

11

Debtor has an executable property interest, or blocked deposits owed to a Judgment Debtor, within the meaning of New York attachment and execution law, and are not immune from execution within the meaning of the FSIA or of the Vienna Convention on Diplomatic Relations or of the Vienna Convention on Consular Relations;

(j) that none of the Blocked Funds being made subject to a turnover order consist of property subject to the Vienna Convention on Diplomatic Relations or to the Vienna Convention on Consular Relations, or blocked property or deposit debt in respect of which a waiver of the provisions of TRIA has been made by the President of the United States with respect thereto within the meaning of Section 201(b)(1) of TRIA;

(k) that, upon the compliance by National Bank of Canada with any order of turnover in respect of the Blocked Funds listed in Exhibit D to the Turnover Petition, National Bank of Canada is and shall be discharged under N.Y. C.P.L.R. § 5209 and N.Y. Banking Law § 134(6)(b) from any further liability or obligation to the Republic of Cuba, to any agency or instrumentality of the Republic of Cuba, to the known and unknown Adverse Claimants named in the Interpleader Action, including without limitation the originators, originators' banks, intermediary banks, and any other parties to the wire transfers comprising the Blocked Funds, to the entities identified in Exhibit D to the Turnover as the beneficiaries of the Blocked Funds, to Plaintiff, and to any other party or person, in respect of any amount so turned over;

(l) that, to the extent NBC is ordered to hold, pending further order of the Court directing turnover, or to pay into the registry of the Court upon issuance of a license by OFAC permitting such payment, as necessary, any amount of Blocked Funds owed to the Judgment Debtors and/or to an agency or instrumentality of the Republic of Cuba, NBC, pursuant to CPLR § 5209 and N.Y. Banking Law § 134(6)(b), shall be fully discharged from any and all obligations or other

liabilities to the Republic of Cuba, to the agency or instrumentality of the Republic of Cuba, to the known and unknown Adverse Claimants to be named in the Interpleader Action, including the originators, originators' banks, intermediary banks, to any parties to the wire transfers comprising the Blocked Funds, to the parties identified in Exhibit D to the Turnover as the beneficiaries of the Blocked Funds, to Plaintiff, and to any other person otherwise entitled to claim the funds, to the full extent of such amount so held subject to further order of the Court, or paid into the registry of the Court;

    (m)  that judgment be entered in favor of National Bank of Canada:

        (i)    restraining and permanently enjoining Plaintiff, the Adverse Claimants, the Republic of Cuba, its agencies and instrumentalities, and any other party, from instituting or prosecuting any claim or action against National Bank of Canada in any jurisdiction, arising from or relating to any claim to the property held and turned over pursuant to order of the Court;

        (ii)    upon issuance of the discharge referred to above, dismissing National Bank of Canada as a party to these proceedings and requiring the Adverse Claimants or their agents to litigate among themselves and with Plaintiff concerning their rights to the Blocked Funds indentified in Exhibit D to the Turnover Petition to the extent necessary; and

    (n) that National Bank of Canada be awarded its costs and reasonable attorney's fees incurred in responding to the Petitioner's enforcement efforts, as well as such other and further relief as may be appropriate, which costs and attorney's fees may be charged against, and

deducted by, the National Bank of Canada from the Blocked Funds subject to turnover prior to their turnover to the party entitled thereto.

Dated:  Washington D.C.
        February 28, 2011

Respectfully submitted,

WHITE & CASE LLP

By:  s/ Frank Panopoulos
     Nicole Erb
     Frank Panopoulos
     *Attorneys for Garnishee-Respondent*
     *National Bank of Canada*
     701 13th Street, N.W.
     Washington, D.C. 20005
     Phone: (202) 626-3600
     Fax: (202) 639-9355