| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **PUBLIC VERSION**<br>**REDACTED PORTIONS FILED**<br>**UNDER SEAL** Pursuant to<br>Protective Agreement and Order<br>entered in *Hausler v. The Republic*<br>*of Cuba*, **18 MS 302** |
| JEANNETTE HAUSLER,<br><br>      *Plaintiff-Petitioner*,<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A,<br>CITIBANK, N.A., THE ROYAL BANK<br>OF SCOTLAND N.V. (FORMERLY<br>KNOWN AS ABN AMRO, N.V.), and<br>NATIONAL BANK OF CANADA,<br><br>      *Garnishee-Respondents*. | Civil Action No. 09 Civ. 10289 (VM)<br><br><br>Re: Fidel Castro Ruz, Raul Castro Ruz,<br>The Republic of Cuba, and<br>The Cuban Revolutionary Armed Forces<br><br>[JUDGMENT DEBTORS] |
| NATIONAL BANK OF CANADA,<br><br>      *Garnishee-Respondent*<br>      *and Interpleader*<br>      *Petitioner*,<br><br>v.<br><br><br><br>    , JEANNETTE HAUSLER,<br>UNKNOWN ORIGINATORS 1-25,<br>UNKNOWN ORIGINATORS' BANKS 1-25,<br>AND UNKNOWN INTERMEDIARY BANKS<br>1-25,<br><br>      *Adverse Claimants-*<br>      *Respondents*. | **NATIONAL BANK OF CANADA'S**<br>**PETITION ALLEGING CLAIMS IN**<br>**THE NATURE OF INTERPLEADER** |

Garnishee-Respondent and Interpleader Petitioner National Bank of Canada ("NBC"), by its attorneys White & Case LLP, having filed and served its Answer to Plaintiff's Petition for Turnover Order Pursuant to Federal Rule of Civil Procedure Rule 69 and N.Y. C.P.L.R. § 5225(b) in the first proceeding captioned above ("Turnover Petition"), alleges as follows in support of its Petition Alleging Claims in the Nature of Interpleader ("Interpleader Petition") pursuant to Fed. R. Civ. P. 22, N.Y. C.P.L.R. § 5239, and New York Banking Law § 134(6)(a), upon actual knowledge as to itself and its own acts, and upon information and belief as to all other matters:

1. NBC brings this Interpleader Petition because it is aware that there may be claimants who are or may be adverse ("Adverse Claimants-Respondents") to Plaintiff's claim to the blocked funds identified in Exhibit D to the Turnover Petition and targeted for turnover ("Blocked Funds"). Plaintiff seeks a court order directing NBC to turn over to Plaintiff the Blocked Funds in satisfaction of a judgment obtained by Plaintiff against Fidel Castro Ruz, Raul Castro Ruz, The Republic of Cuba, and The Cuban Revolutionary Armed Forces ("Judgment Debtors"). The Plaintiff's judgment is described in paragraph 7 below.

2. Adverse Claimants-Respondents to Plaintiff include parties to the wire transfers comprising the Blocked Funds that were blocked by NBC's branch office in New York pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515 ("CACRs"). The principal from, inter alia, those Blocked Funds is held in a blocked account on the books of NBC's branch office in New York, while the accumulated interest from, inter alia, the Blocked Funds is held in another blocked account on the books of NBC's branch office in New York. The CACRs are promulgated by the Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Department under the authority of the Trading with the Enemy Act, 50 U.S.C. App. 5(b).

3. The Adverse Claimants-Respondents to the Blocked Funds who are alleged to be agencies or instrumentalities of the Republic of Cuba are identified in paragraphs 15-18 below. The other Adverse Claimants-Respondents to the Blocked Funds are indentified in paragraph 19 (a)-(f) below. The transactions underlying the Blocked Funds are described in paragraphs 20(a)-(d) below.

4. Because NBC is a disinterested, neutral stakeholder in respect of the Blocked Funds identified in Exhibit D to the Turnover Petition, it seeks to place Adverse Claimants-Respondents on notice of claims being asserted by Plaintiff against these funds, and thereby to avoid the risk of inconsistent judgments and double or multiple liability.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 over the Interpleader Petition and to resolve adverse claims to the Blocked Funds in question because the turnover proceeding initiated by Plaintiff invokes federal law in order to enforce a judgment against the Republic of Cuba, a foreign sovereign state, and to turn over blocked assets allegedly belonging to the Republic of Cuba or its agencies or instrumentalities. In addition, this Court has jurisdiction over this proceeding under 28 U.S.C. § 1330 in that it is in the nature of an action against a foreign state and to enforce a judgment against a foreign state as defined in Section 1603(a) of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. 1602 *et seq*. ("FSIA"). This Court furthermore has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all claims that are so related to claims in the proceeding within the Court's original jurisdiction that they form part of the same case or controversy.

6. Venue in respect of the Interpleader Petition is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the property that is the subject of this Interpleader Petition is situated in this district.

## BACKGROUND

7. According to the Turnover Petition, Plaintiff is the successor personal representative of the Estate of Robert Otis Fuller and is seeking to enforce a judgment for compensatory damages of US$ 100 million, of which approximately US$ 95 million remains unsatisfied. The judgment was entered by default in Florida State Court against the Judgment Debtors and was based on allegations of terrorism that included the torture and extrajudicial killing of Robert Otis Fuller in April 1961. On August 20, 2008, the United States District Court for the Southern District of Florida recognized the Florida Judgment, pursuant to 28 U.S.C. § 1738. On September 22, 2008, the judgment was registered in the U.S. District Court for the Southern District of New York ("Federal Judgment").

8. On or about May 12, 2009, at the request of Plaintiff, the U.S. Marshal served a writ of execution on NBC in New York in an effort to satisfy the Federal Judgment by seeking execution against any property of the Republic of Cuba and any of its agencies and instrumentalities that had been blocked pursuant to the CACRs.

9. On or about October 19, 2010, Plaintiff served an Information Subpoena on NBC. On or about December 1, 2010, in response to Plaintiff's Information Subpoena, NBC disclosed information on funds that are blocked at the New York branch of NBC pursuant to the CACRs.

10. Plaintiff filed her Turnover Petition on or about January 10, 2011, and served it on NBC on or about January 12, 2011. The Turnover Petition seeks turnover of certain blocked funds identified by NBC in its response to Plaintiff's Information Subpoena and identified in

Exhibit D to the Turnover Petition, pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297; 116 Stat. 2337, codified at 28 U.S.C. § 1610 note ("TRIA").

11.     Section 201(a) of TRIA provides as follows:

[I]n every case in which a person has obtained a judgment against a terrorist party on a claim based on act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of any terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

12.     Plaintiff relies on TRIA in bringing the Turnover Petition and seeks the execution and turnover of the Blocked Funds identified in Exhibit D to the Turnover Petition and alleged to be property of

each of which is further alleged to be an "agency or instrumentality" of the Republic of Cuba.

## THE PARTIES TO THE THIRD-PARTY PETITION

**The Plaintiff-Petitioner**

13.     Plaintiff-Petitioner Jeannette Hausler allegedly is a resident of the Southern District of Florida.  She allegedly is the successor personal representative of the Estate of Robert Otis Fuller.  Pursuant to the Turnover Petition, Plaintiff seeks to enforce the Federal Judgment entered by default against the Judgment Debtors.

**The Garnishee-Respondent and Interpleader Petitioner**

14.     NBC is a banking institution organized and existing under the laws of Canada that maintains its head office at National Bank Tower, 600 De La Gauchetière Street West, 4th Floor, Montreal, Quebec H3B 4L2, Canada, and maintains a branch office in New York at 65 East 55th Street, 31st Floor, New York, New York 10019.  NBC's branch office in New York maintains blocked Account         , identified in Exhibit D to the Turnover Petition, on its books.  Certain

blocked funds in Account          are the subject of the Turnover Petition and constitute the property against which the Plaintiff has directed the U.S. Marshal to levy a writ of execution.

**The Adverse Claimants-Respondents Alleged In The Turnover Petition To Be Agencies Or Instrumentalities Of The Republic Of Cuba And To Have An Executable Interest In The Blocked Funds**

15.     Adverse Claimant-Respondent                                    is located at                                                          .                                     is alleged by Plaintiff to be an agency or instrumentality of the Republic of Cuba.                            is identified in Exhibit D to the Turnover Petition as the beneficiary of the proceeds from one wire transfer that NBC's New York branch office blocked on its books and deposited in Account       at the New York branch, as described in paragraph 20(a) below.

16.     Adverse Claimant-Respondent                                 is located at                                                       .                    is alleged by Plaintiff to be an agency or instrumentality of the Republic of Cuba.                   is identified in Exhibit D to the Turnover Petition as the beneficiary of the proceeds from one wire transfer that NBC's New York branch office blocked on its books and deposited in Account       at the New York branch, as described in paragraph 20(b) below.

17.     Adverse Claimant-Respondent                                  is located at                                                       is alleged by Plaintiff to be an agency or instrumentality of the Republic of Cuba.             is identified in Exhibit D to the Turnover Petition as the beneficiary of the proceeds from one wire transfer that NBC's New York branch office blocked on its books and deposited in Account        at the New York branch, as described in paragraph 20(c) below.

18. Adverse Claimant-Respondent                                                    is located at               is alleged by Plaintiff to be an agency or instrumentality of the Republic of Cuba.                         is identified in Exhibit D to the Turnover Petition as the beneficiary of the proceeds from one wire transfer that NBC's New York branch office blocked on its books and deposited in Account        at the New York branch, as described in paragraph 20(d) below.

**The Other Adverse Claimants-Respondents to the Blocked Funds**

19. The following Adverse Claimants-Respondents, which are listed alphabetically, were or may have been parties to wire transfers that were blocked by NBC's New York branch pursuant to the CACRs.  Adverse Claimants-Respondents                                     are not alleged to be agencies or instrumentalities of the Republic of Cuba.  It is not known if the Unknown Adverse Claimants-Respondents are agencies or instrumentalities of the Republic of Cuba:

   a. Adverse Claimant-Respondent                is the                    of          a                              incorporated under the laws of              that maintains its head office at                 was a party to a wire transfer that NBC's New York branch office blocked on its books as described in paragraph 20(a) below.

   b. Adverse Claimant-Respondent                             is a          organized under the laws of the                  that was previously the              , and maintains its principal offices at                                       was a party to a wire transfer that NBC's New York branch office blocked on its books as described in paragraph 20(b) below.

   c. Adverse Claimant-Respondent                               is a                        organized and existing under the laws of the              that maintains its head offices at                  and maintains an office in this district at                              was a party to a wire transfer that NBC's New York branch office blocked on its books as described in paragraph 20(d) below.

7

   d. Adverse Claimants-Respondents Unknown Originators 1-25 are the senders of the first payment order in the funds transfers comprising the Blocked Funds, and may have claims to the Blocked Funds under the N.Y. U.C.C § 4A-402.

   e. Adverse Claimants-Respondents Unknown Originators' Banks 1-25 are (a) the receiving bank to which the payment order of the originator was issued with respect to the funds transfers comprising the Blocked Funds, if the originator was not a bank, or (b) the originator if the originator was a bank, and may have claims to the Blocked Funds under the N.Y. U.C.C § 4A-402.

   f. Adverse Claimants-Respondents Unknown Intermediary Banks 1-25 are the receiving banks other than the originators' banks or the beneficiaries' banks with respect to the funds transfers comprising the Blocked Funds, and may have claims to the Blocked Funds under the N.Y. U.C.C § 4A-402.

## THE BLOCKED FUNDS AT NBC THAT ARE TARGETED FOR TURNOVER

20. The Blocked Funds held by NBC's New York branch that are targeted by Plaintiff-Petitioner for turnover total approximately             in principal and are listed in Exhibit D to the Turnover Petition. These funds are described in paragraphs 20(a)-(d) below:

   a.             was either the originator, or the originator's bank or intermediary bank of a          wire transfer on               was the intended beneficiary of the wire transfer. NBC's New York branch, as intermediary bank, blocked the wire transfer pursuant to the CACRs and placed the funds into a blocked account,         

   b.                was either the originator, or the originator's or intermediary bank of a          wire transfer on             was the intended beneficiary of the wire transfer. NBC's New York branch, as intermediary bank, blocked the wire transfer pursuant to the CACRs and placed the funds into a blocked account,        .

   c. On             NBC's New York branch received a wire transfer in the amount of         .                 was the intended

8

beneficiary of the wire transfer. NBC's New York branch, as intermediary bank, blocked the wire transfer pursuant to the CACRs and placed the funds into a blocked account,

    d.                                       was either the originator, or the originator's or intermediary bank of a            wire transfer on         .

           was the intended beneficiary of the wire transfer. NBC's New York branch, as intermediary bank, blocked the wire transfer pursuant to the CACRs and placed the funds into a blocked account,

21. Account           is an omnibus account containing, inter alia, the principal amount of the Blocked Funds, in this case        . Accumulated interest from the Blocked Funds is held in blocked account        which also is an omnibus account containing the accumulated interest for all funds blocked by the New York branch of NBC.

## THE NEED FOR INTERPLEADER RELIEF

22. Plaintiff-Petitioner alleges in the Turnover Petition that the Blocked Funds identified in Exhibit D to the Turnover Petition are amenable to levy and turnover as property of the Republic of Cuba and/or its agents or instrumentalities blocked pursuant to the CACRs within the meaning of TRIA § 201(a). NBC has filed this Interpleader Petition to bring before the Court known and unknown parties with potential adverse claims to these Blocked Funds and to obtain a discharge in interpleader pursuant to N.Y. C.P.L.R. § 5209 and N.Y. Banking Law § 134(6)(b).

23. NBC does not know who are the proper claimants of the Blocked Funds identified in Exhibit D to the Turnover Petition, nor does NBC know if the beneficiaries identified in Exhibit D are agencies or instrumentalities of the Republic of Cuba. The beneficiaries identified in Exhibit D to the Turnover Petition may have rights to the Blocked Funds that are superior to

Plaintiff's claim because those beneficiaries may not be agents or instrumentalities of Cuba. The beneficiaries identified in Exhibit D to the Turnover Petition may also have rights to the Blocked Funds that are superior to Plaintiff's claim because the Blocked Funds may not be executable under applicable law.

24.     Moreover, to the extent that this Court's decision that TRIA preempts Article 4A of New York's Uniform Commercial Code is reversed by the United States Court of Appeals for the Second Circuit in any appeal of that decision or otherwise, the known and unknown originators, originators' banks, and/or intermediary banks sending the wire transfers that comprise the Blocked Funds, including withouit limitation Adverse Claimant-Respondents may have a property interest in the Blocked Funds that is superior to Plaintiff's claim.

25.     Under these circumstances, there may be conflicting claims to the Blocked Funds identified in Exhibit D to the Turnover Petition, thereby exposing NBC to the risk of inconsistent judgments and double or multiple liability. Consequently, pursuant to Fed. R. Civ. P. 22, N.Y. C.P.L.R. § 5239, and New York Banking Law § 134(6)(a), NBC, as a disinterested or neutral stakeholder, brings before the Court any person or adverse claimant with a potential claim to the same funds who may not already be a party to the action.

26.     NBC takes no position on the entitlement of Plaintiff-Petitioner to execute on the Federal Judgment by obtaining turnover of the Blocked Funds identified in Exhibit D to the Turnover Petition, or on the defenses that any of the other Adverse Claimants-Respondents may have against such execution.

27. NBC does take the position, however, that to the extent any of the Adverse Claimants-Respondents fails to appear to assert a defense to execution or a claim to the Blocked Funds, that it will be important for the Court to adjudicate, and the Court is respectfully requested to so adjudicate, all issues bearing on the rights of any or all of such defaulting Adverse Claimants-Respondents with respect to the Blocked Funds held by NBC's New York branch that are the subject of the Turnover Petition, and that such adjudication will relieve NBC of further liability.

28. NBC further takes the position that to the extent any of the Adverse Claimants-Respondents appears, it will be important for the Court to adjudicate, and the Court is respectfully requested to so adjudicate, ownership rights of the Blocked Funds held by NBC's New York branch that are the subject of the Turnover Petition, and that such adjudication will relieve NBC of further liability.

## PRAYER FOR RELIEF

29. WHEREFORE, NBC requests that the Court enter judgment determining:

    (a) the specific Blocked Funds listed in Exhibit D to the Turnover Petition that are subject to execution and turnover, if any, the amount of such Blocked Funds, if any, to be turned over pursuant to any execution or turnover order, and the identity of the party, if any, to whom such turnover is to be made;

    (b) that the Blocked Funds against which turnover is ordered consist of the blocked property or blocked deposits in the United States of the Republic of Cuba or an agency or instrumentality of the Republic of Cuba, and that TRIA allows the Blocked Funds to be executed against to satisfy a judgment against the Judgment Debtors for compensatory damages, irrespective of whether the Blocked Funds would otherwise be immune from attachment, attachment in aid of execution, or execution;

    (c) that each judgment as to which turnover is ordered is (i) against the Republic of Cuba as a terrorist party on a claim based on an act of terrorism within the meaning of TRIA, or (ii) based on a claim in respect of an act of terrorism for which a terrorist party is not immune under 28 U.S.C. § 1605A;

(d) that the amount of each judgment as to which turnover is ordered, including interest and any poundage, is solely for compensatory, not punitive, damages in respect of which the terrorist party has been adjudged liable inasmuch as TRIA § 201(a) permits execution only upon blocked assets in aid of execution in order to satisfy judgments "to the extent of any compensatory damage for which [a] terrorist party has been adjudged liable";

(e) that, in respect of each judgment entered against a terrorist party by default, (i) a copy of such default judgment was sent to the foreign state in a manner provided by service by 28 U.S.C. § 1608(a) or (b) and (e), (ii) the Petitioner served the Judgment Debtors in accordance with 28 U.S.C. § 1608(a) or (b), as applicable, (iii) notice to the Judgment Debtors as required by 28 U.S.C. § 1610(e) was given; and (iv) a reasonable period of time has elapsed following the entry of said judgments as required by 28 U.S.C. § 1610(c).

(f) that, to the extent TRIA is not relied upon, the Blocked Funds against which turnover is ordered consist of blocked property of a Judgment Debtor or property in which a Judgment Debtor has an executable property interest, or blocked deposits owed to a Judgment Debtor, within the meaning of New York attachment and execution law, which is not immune from execution within the meaning of the FSIA or of the Vienna Convention on Diplomatic Relations or of the Vienna Convention on Consular Relations;

(g) that none of the Blocked Funds being made subject to a turnover order consist of property subject to the Vienna Convention on Diplomatic Relations or to the Vienna Convention on Consular Relations, or blocked property or deposit debt in respect of which a waiver of the provisions of TRIA has been made by the President of the United States with respect thereto within the meaning of Section 201(b)(1) of TRIA;

(h) that notice to Adverse Claimants-Respondents of the nature and effect of the turnover proceeding and Interpleader Action has been given in a manner reasonably calculated to give Adverse Claimants the opportunity to bring their claims to those Blocked Funds before the Court, that such notice is adequate to satisfy the demands of Due Process and permit the final and binding adjudication of the rights of any such Adverse Claimants in the Blocked Funds, and that service by NBC of its Interpleader Petition on the Adverse Claimants-Respondents constitutes good and sufficient service;

(i) that, upon the compliance by National Bank of Canada with any order of turnover in respect of the Blocked Funds listed in Exhibit D to the Turnover Petition, National Bank of Canada is and shall be discharged under N.Y. C.P.L.R. § 5209 and N.Y. Banking Law § 134(6)(b) from any further liability or obligation to the Republic of Cuba, to any agency or instrumentality of the Republic of Cuba, to the Adverse Claimants-Respondents, including without limitation the originators, originators' banks, intermediary banks, and any other parties to the wire transfers comprising the Blocked Funds, to the entities identified in Exhibit D to the Turnover as the beneficiaries of the

Blocked Funds, to Plaintiff, and to any other party or person otherwise entitled to claim the funds, in respect of any amount so turned over;

  (j) that, to the extent NBC is ordered to hold, pending further order of the Court directing turnover, or to pay into the registry of the Court upon issuance of a license by OFAC permitting such payment, any amount of Blocked Funds owed to the Judgment Debtors and/or to an agency or instrumentality of the Republic of Cuba, NBC, pursuant to CPLR § 5209 and N.Y. Banking Law § 134(6)(b) shall be fully discharged from any and all obligations or other liabilities to the Republic of Cuba, to the agency or instrumentality of the Republic of Cuba, to the Adverse Claimants-Respondents, including the originators, originators' banks, intermediary banks, to any parties to the blocked wire transfers comprising the Blocked Funds, to the beneficiaries indentified in Exhibit D to the Turnover Petition, to Plaintiff, and to any other person otherwise entitled to claim the funds, to the full extent of such amount so held subject to further order of the Court, or paid into the registry of the Court;

  (k) that judgment be entered in favor of National Bank of Canada:

    (i) restraining and permanently enjoining Plaintiff, the Adverse Claimants-Respondents, the Republic of Cuba, its agencies and instrumentalities, and any other party, from instituting or prosecuting any claim or action against National Bank of Canada in any jurisdiction, arising from or relating to any claim to the property held and turned over pursuant to order of the Court;

    (ii) upon issuance of the discharge referred to above, dismissing National Bank of Canada as a party to these proceedings and requiring the Adverse Claimants-Respondents or their agents to litigate among themselves and with Plaintiff concerning their rights to the Blocked Funds indentified in Exhibit D to the Turnover Petition to the extent necessary; and

  (l) Awarding National Bank of Canada its costs and reasonable attorney's fees incurred in responding to Plaintiff's enforcement efforts, as well as such other and further relief as may be appropriate, which costs and attorney's fees may be charged

against, and deducted by the National Bank of Canada from, the Blocked Funds subject to turnover prior to their turnover to the party entitled thereto.

Dated: Washington D.C.  
February 28, 2011

Respectfully submitted,

**WHITE & CASE LLP**

By: s/ Frank Panopoulos
Nicole Erb
Frank Panopoulos
*Attorneys for Garnishee-Respondent and Interpleader Petitioner National Bank of Canada*
701 13th Street, N.W.
Washington, D.C. 20005
Phone: (202) 626-3600
Fax: (202) 639-9355