UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEANNETTE FULLER HAUSLER as *Successor Personal Representative* *of the Estate of* ROBERT OTIS FULLER, ("BOBBY FULLER"), *Deceased*, on behalf of THOMAS CASKEY as Personal Representative of the Estate of LYNITA FULLER CASKEY, surviving daughter of ROBERT OTIS FULLER, The ESTATE OF ROBERT OTIS FULLER, FREDERICK FULLER, FRANCIS FULLER, GRACE LUTES, JEANNETTE FULLER HAUSLER, and IRENE MOSS, <br><br>Petitioner, <br><br>- against - <br><br>JP MORGAN CHASE BANK, N.A, CITIBANK, N.A., UBS AG, THE ROYAL BANK OF SCOTLAND N.V. (FORMERLY KNOWN AS ABN AMRO, N.V.), BANK OF AMERICA, N.A., and NATIONAL BANK OF CANADA, <br><br>Garnishee-Respondents. | 09 Civ. 10289 (VM) <br><br>(Related to the JPMChase/Citibank Turnover Proceeding -- Tranche I) <br><br><br><br>RE: Fidel Castro Ruz, Raul Castro Ruz, The Republic of Cuba, and The Cuban Revolutionary Armed Forces <br><br>[JUDGMENT DEBTORS] |

**MEMORANDUM OF LAW IN SUPPORT OF
PETITIONER'S MOTION FOR JUDGMENT ON THE
<u>PLEADINGS AND FOR TURNOVER CONCERNING PETITION I</u>**

GREENBERG TRAURIG, LLP
*Attorneys for Petitioner Jeannette Hausler*
MetLife Building
200 Park Avenue
New York, New York 10166
(212) 801-9200

# TABLE OF CONTENTS

NATURE OF THE PROCEEDING ................................................................................ 1

ARGUMENT .................................................................................................................... 4

    POINT I   PETITIONER IS ENTITLED TO JUDGMENT ON THE
                  INTERPLEADER ................................................................................... 4

            A.   If SPB Is Addressing a Different EFT Transaction, SPB Has
                Failed to File a Timely Response to Citibank's Interpleader,
                and Is in Default .................................................................................. 5

            B.   Alternatively, SPB Has Not Asserted Any Cognizable,
                Enforceable Property Interest In The Subaccount 203 Funds
                That Would Preclude Execution ........................................................... 5

                1.   Banco Nacional Is Legally Presumed to Be the Owner
                      of Subaccount 203; SPB as the Originating Bank Does
                      Not Have a Superior Ownership Claim ............................................ 6

                2.   As The Originator, SPB Has No Claim of Superior
                      Ownership Over Subaccount 203. ..................................................... 7

                3.   SPB Is Barred by New York's Statute of Repose from
                      Claiming That Citibank Improperly Designated Banco
                      Nacional as the Owner of Subaccount 203. ...................................... 7

                4.   SPB's Claims Against Citibank Are Barred by New
                      York's Statute of Limitations. ............................................................ 8

                5.   Under New York Law, SPB Has Abandoned Any Claim
                      To Own Subaccount 203. ................................................................... 8

                6.   Any Claim By SPB Against the United States Based on
                      the Application of TWEA or CACR to Subaccount 203
                      is Barred by the Federal Statute of Limitations. ............................... 8

            C.   SPB's "Affirmative Defenses" Provide No Basis to Defeat
                Petitioner's Right to A Turnover Judgment ........................................... 9

                1.   SPB's Constitutionally-Based Defenses Fail as a Matter
                      of Law .............................................................................................. 10

                2.   SPB Has No Viable Defense Based on International
                      Comity and Extraterritoriality .......................................................... 11

      3. SPB Cannot, as a Matter of Law, Prevail Based on Post-Blocking Payment. ...................................................................... 13

      4. SPB Cannot Prevail on Its "Mistake" Defense ............................... 13

**POINT II PETITIONER IS ENTITLED TO JUDGMENT ON THE TURNOVER PETITION REGARDING SUBACCOUNT 203** ..................... 14

    A. Petitioner is Entitled To Judgment Against Citibank on the Turnover Petition ................................................................................... 14

    B. Petitioner is Entitled to Judgment Against the Judgment Debtors .................................................................................................. 14

**CONCLUSION** ........................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516 (2d Cir.1985) ................ 11

*Cuba v. Chemical Bank New York Trust Co.*, 594 F.Supp. 1553 (S.D.N.Y. 1984) ...................... 14

*Cunard S.S. Co. Ltd. v. Salen Reefer Servs.,* 773 F.2d 453 (2d Cir. 1985) .................................. 11

*Dames & Moore v. Regan*, 453 U.S. 654 (1981) ......................................................................... 10

*E.E.O.C. v. Arabian American Oil Co.*, 499 U.S. 244, (1991) ..................................................... 12

*E-Systems, Inc. v. United States*, 2 Cl. Ct. 271 (Claims Ct. 1983) ............................................... 10

*Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431 (9th Cir. 1996) .................................. 11

*Holder v. Humanitarian Law Project*, 130 S.Ct. 2705 (U.S. 2010) ............................................. 11

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C.Cir.1984) ................ 11

*Orvis v, Brownell*, 345 U.S. 183 (1953) ....................................................................................... 10

*Pravin Banker Associates, Ltd. v. Banco Popular Del Peru*, 109 F.3d 850 (2d Cir. 1997) ......... 11

*Propper v. Clark*, 337 U.S. 472 (1949) ........................................................................................ 10

*Sardino v. Federal Reserve Bank of New York*,
   361 F.2d 106 (2d. Cir. 1966), *cert. denied*, 385 U.S. 898 (1966) ............................................ 10

*Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435 (3d Cir. 1971) ................... 10

*U.S. v. Currency $267,961.07,* 916 F.2d 1104 (6th Cir. 1990) .................................................... 10

*Weininger v. Castro,* 462 F. Supp. 2d 457, 498 (S.D.N.Y. 2006), 341 U.S. 446 (1951) ............. 14

*Valbrun v. Hogan*, 439 F.3d 136 (2d Cir. 2006) .......................................................................... 10

*Zarmach Oil Services, Inc. v. U.S. Department of Treasury*,
   Civ. A. No. 09-2164 (ESH), 2010 WL 4627838 (D.D.C. Nov. 16, 2010) ............... 7, 11, 12, 13

*Zittman v. McGrath*, 341 U.S. 446 (1951) ................................................................................... 10

**Federal Statutes**

28 U.S.C. § 1608 ............................................................................................................................ 2

28 U.S.C. § 1610 ............................................................................................................................ 1

28 U.S.C. § 2401(a) ....................................................................................................................... 9

**State Statutes**

N.Y. C.P.L.R. § 5225(b) ................................................................................................................. 1

N.Y. U.C.C. § 4A-505 .................................................................................................................... 7

NY Abandoned Property Law § 300 .............................................................................................. 8

**Federal Rules**

Fed. R. Civ. P. 5.1 ......................................................................................................... 8
Fed. R. Civ. P. 8(c) ....................................................................................................... 4
Fed. R. Civ. P. 22 ......................................................................................................... 9
Fed. R. Civ. P. 69 ..................................................................................................... 1, 2

**Regulations**

31 C.F.R. Part 515 ........................................................................................................ 1
31 C.F.R. § 515.203(a) ............................................................................................... 13
31 C.F.R. § 515.508 ..................................................................................................... 1

Petitioner Jeannette Hausler ("Petitioner or Hausler"), by her undersigned attorneys, respectfully submits this Memorandum in support of her motion for judgment on the pleadings as to the Joint Third-Party Petition Alleging Claims in the Nature of Interpleader, dated April 21, 2010 2011 (Dkt. 21) and summary judgment on her turnover petition filed January 19, 2010 (Misc. Dkt. 18 MS 302) ("Turnover Petition I") as to "Subaccount 203" held by garnishee/respondent Citibank, N.A. ("Citibank").

## NATURE OF THE PROCEEDING

This is a proceeding pursuant to Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297; 116 Stat. 2337, codified at 28 U.S.C. § 1610, note; N.Y. C.P.L.R. § 5225(b) as applied through Fed. R. Civ. P. Rule 69, for an order compelling Citibank to turn over an interest-bearing account identified by Citibank as "Subaccount 203" (which held $2,310,854.57 as of July 23, 2009), and which has been blocked in accordance with the Cuban Assets Control Regulations ("CACR"), 31 C.F.R. Part 515, since at least July 9, 2001. According to Citibank, this account holds the proceeds of an Electronic Fund Transfer ("EFT") originated by Banco Nacional de Cuba, in which Shanghai Pudong Bank was identified as the originating bank, as demonstrated by the single document its has located and produced, which is attached as Exhibit H to the accompanying Declaration of James W. Perkins dated April 15, 2011 ("Perkins Decl."). Since the instructions indicate that the originator was Banco Nacional de Cuba, a Cuban entity, Citibank established an interest-bearing account and deposited the proceeds of the blocked EFT there in accordance with the express provisions of the CACR. Those regulations further require, under these circumstances, that the account be held in the name of Banco Nacional de Cuba. See 31 C.F.R. § 515.508 (hereinafter, all references to 31 C.F.R. will appear as "CACR").

Petitioner filed Turnover Petition I seeking turnover of, *inter alia,* the funds held in Subaccount 203. As alleged therein at ¶¶27-29, and as demonstrated below, the funds held in Subaccount 203 are blocked assets of an agency or instrumentality of the Republic of Cuba. Petitioner is, therefore, entitled under the provisions of Section 201 of TRIA to execute her judgment against those funds "notwithstanding any other provision of law."

In response, Citibank disclaimed any interest in, or claim to, Subaccount 203, and filed the Interpleader.[1] As to Subaccount 203, Citibank interpleaded the Petitioner, Banco Nacional de Cuba, and Shanghai Pudong Bank ("SPB"), but it did not interplead any of the judgment debtors (including the Republic of Cuba)[2] or any other judgment creditor who has sought to satisfy its terrorism-related judgments against Cuba by garnishing any accounts under TRIA, apparently because there are no such parties. Nor did Citibank interplead any party identified as either the beneficiary or beneficiary bank designated in the EFT instructions under which Citibank blocked the funds now held in Subaccount 203.

Thereafter, the respondent banks (including Citibank) to a separate, but related Petition III, moved to dismiss it, asserting *inter alia* that under New York law, an EFT transaction, while in process in the hands of an intermediary bank, is not the property of any party and, therefore, cannot be garnished under New York procedures made applicable in this Court through Fed. R. Civ. P. 69. As detailed in the Memorandum in support of judgment on the Petition III interpleader at 1-2 (hereinafter "Pet. III Mem."), this Court denied the banks' motion by Order

---

[1] Citibank filed its Petition jointly with JP Morgan Chase Bank, N.A. and it addressed various accounts held by either Citibank or Chase. All named respondents received service of process, except SPB for which service was effected but not confirmed. SPB appeared after the Court authorized Citibank to provide actual notice to SPB. All other accounts addressed in the Turnover Petition I and the joint Citibank/Chase interpleader petition have been ordered to be turned over to Petitioner and have, in fact, been paid to Petitioner toward her TRIA judgment.

[2] Petitioner separately served the Turnover Petition I upon all of the judgment debtors in accordance with 28 U.S.C. § 1608. (Dkt. No. 62-68.) None of the judgment debtors has appeared in this proceeding.

dated September 10, 2010, holding that, under the specific terms of CACR and TRIA, the Cuban national or entity whose interests in these EFTs had led to their blocking had a sufficient property interest in the blocked account to allow garnishment and execution, *id.* at 17, and that, through TRIA, "Congress has explicitly promulgated a comprehensive scheme providing that any assets blocked under the CACRs or similar OFAC regulations are to be subject to judgment execution for the benefit of victims of terrorist states – most fittingly, as in this case, when the crime victim was an American citizen." *Id.* at 35.

Now, fifteen months after Turnover Petition I was filed, and nearly a year after Citibank filed its interpleader, SPB has filed an answer (Dkt. 218, herein referenced as "SPB Answer"). According to SPB, it was not a party to any EFT occurring on July 9, 2001 in which Banco Nacional de Cuba was the originating party. SPB Answer ¶ 24. However, according to SPB, it was "either the originator or the originating bank" in connection with an EFT instruction which – coincidentally – occurred on July 9, 2001 and which – coincidentally – involved the same amount. SPB Answer ¶ 27. On this basis, SPB surmises, it has a "property interest" (of an undisclosed nature) in Subaccount 203, although SPB denies any knowledge of the existence of Subaccount 203 itself. *Id*. ¶ 40. SPB concedes that the amounts in Subaccount 203 are blocked under CACR, but denies that "Banco National de Cuba has any claim to the blocked funds" in that subaccount. *Id*. ¶ 45. SPB does not identify any efforts through the U.S. federal government, or otherwise, it has undertaken in order to assert, protect or perfect any claim an interest in this transaction that occurred over a decade ago.

Furthermore, SPB asserts a variety of arguments presented as "affirmative defenses":

- That it "has a property interest in the blocked funds . . . because [it] was the originator **or** originating bank in the electronic transfer of such funds" (¶ 63) (emphasis added);

3

- That "Banco National de Cuba was neither the originator of, nor a participant in, the EFT initiated by SPB, and any designation of Banco National de Cuba as the originator of, or a participant in, the EFT by SPB was mistaken" (¶ 64);

- That even if Banco National de Cuba was the originator of the EFT, "no property of Cuba was transferred during the EFT, and Banco National de Cuba neither has nor ever had any interest in the midstream EFT" (¶ 65);

- That after determining that the beneficiary bank did not receive payment by Citibank, SPB made "a subsequent payment to the beneficiary" which "extinguished" any interest that the designated beneficiary may have had in such funds (at ¶ 67); and

- That SPB has a property interest in the funds because it "is entitled to a refund . . . because the transfer was not completed with payment to the designated beneficiary and [SPB] made a subsequent payment to the designated beneficiary" (at ¶ 68).

In addition, SPB alleges that the Trading with the Enemy Act ("TWEA"), CACR and TRIA are unconstitutional (either facially or as applied here) because they violate, variously, the Fifth Amendment (¶ 58); the Fourth Amendment, (¶ 60); or some unidentified Constitutional provision because they are "void for vagueness" (¶ 59). SPB also asserts that application of CACR, TWEA and/or TRIA are barred by principles of "international comity" (¶ 61) and some unidentified prohibition on application of U.S. law "extraterritorially" (¶ 62).

## ARGUMENT

### POINT I

### PETITIONER IS ENTITLED TO JUDGMENT ON THE INTERPLEADER

As noted, both Citibank and SPB expressly concede that the funds held in Subaccount 203 are "blocked" and deposited there under TWEA and CACR because Citibank concluded (based on the instructions from SPB) that Banco Nacional de Cuba was a party thereto, and had an interest in the funds. Neither Citibank nor SPB has affirmatively pleaded that either had sought or received a license under CACR, presumably because they have not. *See* Fed. R. Civ. P. 8(c) (requiring affirmative pleading of "license"). Lastly, all parties concede that the blocking occurred on or about July 9, 2001.

4

Assuming (solely for purposes of this motion) the validity of the facts to be drawn from the Citibank and SPB pleadings, SPB has either (1) no material response to the substance of Citibank's interpleader, but rather is claiming an interest in a totally different transaction – *i.e.*, one in which Banco Nacional de Cuba had no role, or (2) alleged that over ten years ago Citibank acted upon erroneous instructions or misread them, resulting in the blocking of the EFT and the deposit of the EFT proceeds into Subaccount 203 (which was required to be held in the name of Banco Nacional de Cuba and not in the name of SPB), but that SPB has never acted to seek correction of Citibank's actions.

The Court need not resolve which of these two scenarios is being presented by SPB because, under either scenario, Petitioner is entitled to judgment on the pleadings.

### A. If SPB Is Addressing a Different EFT Transaction, SPB Has Failed to File a Timely Response to Citibank's Interpleader, and Is in Default

If SPB is addressing a different transaction than that described by Citibank as having been originated by Banco Nacional de Cuba, then it has failed to answer the interpleader within the requisite time frame, either under Fed. Rule Civ. Pr. 12(a), or the period for response set by this Court's order of February 17, 2011. As SPB has not asserted a claim to the funds at issue, it is properly deemed to have defaulted.

### B. Alternatively, SPB Has Not Asserted Any Cognizable, Enforceable Property Interest In The Subaccount 203 Funds That Would Preclude Execution

Alternatively, if SPB is addressing the same transaction alleged in the interpleader, but asserting that Citibank received incorrect instructions or misread those instructions, the pleading is facially deficient because SPB has failed to allege facts indicating that it can identify these EFT instructions (*e.g.*, by numerical or alphabetical serial indicators or other markers in use within its system or Citibank's system in July 2001). Indeed, according to its answer to Citibank's interpleader, SPB does not even possess documentation that allows it to aver with any

5

certainty the nature of the role it played in the EFT - let alone the role of any other party, having asserted no less than four times (*see* SPB Answer, at ¶¶ 10, 27, 41, 63) that it was "**either** the originator **or** originating bank."

There is, however, no need for further efforts to unravel SPB's inscrutable and deficient pleading. Principally, there is no basis to address SPB's claim of "superior interest", because, under TRIA, this is irrelevant. *See* Pet. III Mem. at 13-15 (under longstanding principles, blocked assets may be used by Congress to compensate U.S. victims without regard to interests of others); Order of Sept. 10 at 27 (quoting statements of Senator Harkin). Moreover, under either scenario SPB presents, the facts admitted or not disputed demonstrate, conclusively, that SPB has no claim to a property interest in Subaccount 203 by reason of the passage of time and its own inactivity, whether as the originator or the originating bank. As more fully addressed in Pet. III Mem. at 9 to 10, this is true for at least six reasons:

    1.    Banco Nacional Is Legally Presumed to Be the Owner of Subaccount 203; <u>SPB as the Originating Bank Does Not Have a Superior Ownership Claim</u>

Under its reading of the EFT instructions, Citibank was required by CACR to maintain Subaccount 203 in the name of Banco Nacional de Cuba. As is demonstrated in Pet. III Mem. at 5 to 7, under common law, this account is therefore presumptively owned by Banco Nacional de Cuba. On the other hand, an originating bank would have no cognizable property interest in the *res* now being held on deposit by Citibank in Subaccount 203. SPB is mistaken that an originating bank would have some cognizable claim that supersedes Banco Nactional de Cuba's ownership interest in Subaccount 203. Nor has SPB alleged that, under TRIA, this claim of "superiority" has any relevance. *Id*.

>    2. As The Originator, SPB Has No Claim
>       of Superior Ownership Over Subaccount 203

To the extent that SPB claims some ownership interest in Subaccount 203 because it was the originator of the EFT, this too would fail. As demonstrated in Pet. III Mem. at 3 to 4, the Second Circuit has expressly held that, under New York law, EFTs "**are not the property of either the originator or the beneficiary**," *Jahldi*, 585 F. 3d at 71 (emphasis added). Whatever interests an EFT originator may have are insufficient for standing to challenge, judicially, the blocking or any administrative action (or inaction) through which the originator is barred from reclaiming ownership or control of the proceeds thereof. Pet. III Mem. at 8-9 (citing *Zarmach Oil Services, Inc. v. U.S. Department of Treasury*, No. 09-2164 (ESH), 2010 WL 4627838 (D.D.C. Nov. 16, 2010)). Thus, if SPB is the originator, it has no basis to rebut the legal presumption that Banco Nacional de Cuba is the lawful owner of the funds deposited in Subaccount 203.

>    3. SPB is Barred by New York's Statute of
>       Repose From Claiming That Citibank Improperly
>       Designated Banco Nacional as the Owner of Subaccount 203

As demonstrated in the Pet. III Mem. at 9 to 10, SPB's claim as an originating bank challenging Citibank's action in blocking the EFT is time barred under N.Y. U.C.C. § 4A-505. SPD has known over a decade that Citibank blocked the EFT because (in SPB's view) it either received erroneous instructions or misread the EFT instructions. In either case, SPB would have been obligated to communicate this mistake to Citibank in writing, but Citibank is not in possession of any such correspondence. Thus, SPB's failure to give notice around July 9, 2002 would, as a matter of law, extinguish any claim it might have as the originating bank.

7

        4.        **SPB's Claims Against Citibank Are <br>             Barred by New York's Statute of Limitations**

Even if SPB could survive the Statute of Repose, any claim to overturn the Citibank's handling of the EFT would be barred by the statute of limitations, as demonstrated in Pet. III Mem. at 9-10. SPB's belated attempt in March, 2011 to assert some right to "correct" the record has been time barred for nearly five years.[3]

        5.        **Under New York Law, SPB Has <br>             Abandoned Any Claim To Own Subaccount 203**

Also as explained in Pet. III Mem. at 7 n.9, SPB's failure to correspond with Citibank at any time further demonstrates that – even if SPB ever had a basis to claim ownership of any funds deposited in Subaccount 203 – it has now abandoned any claim to those funds by operation of NY Abandoned Property Law § 300. SPB cannot possibly demonstrate that it holds an interest in that *res* that would be superior to the interest of, and would rebut the presumption of ownership by, Banco Nacional de Cuba.[4]

        6.        **Any Claim By SPB Against the United States <br>             Based on the Application of TWEA or CACR to <br>             Subaccount 203 is Barred by the Federal Statute of Limitations**

Finally, SPB appears to assert, by way of its response, that it has a cause of action (beyond those alleged in its time barred claims against Citibank) against the United States based on the unconstitutional application of the blocking of Subaccount 203 under TWEA and CACR and the requirement that it be held in the name of Banco Nacional de Cuba.

---

[3] As explained in Pet. III Mem. at 10 n.12, neither TWEA nor CACR precluded SPB from suing Citibank. Thus, the statute of limitations is not tolled merely because Subaccount 203 was blocked.

[4] By way of contrast, under CACR, any action (or inaction) by Banco Nacional de Cuba which might constitute abandonment under any body of law, including New York state law, would be null and void, and of no effect. *See* CACR §515.310 (defining prohibited "transfer" by blocked Cuban entity to include any "actual or purported act or transaction . . . and whether done or not done, . . . the purpose or effect of which is to . . . surrender, release, transfer, or alter, directly or indirectly, any right, remedy, power, privilege or interest . . . .").

But, SPB has failed to implead the United States.[5]  Even if SPB could procedurally invoke its pursue an action adverse to the United States in this proceeding, its claims would be time barred under 28 U.S.C. § 2401(a), which provides that "every civil action against the United States shall be barred unless the complaint is filed within six years after the right of action first accrued."  Any right of action that SPB could possibly assert against the United States based on the application of TWEA and CACR to the EFT proceeds and the deposit into an interest-bearing account in the name of Banco Nacional would necessarily have accrued no later than the date of the deposit of the EFT proceeds into Subaccount 203 in July, 2001.  By any measure, this occurred more than six years ago.

In sum, SPB's claim of "superior interest" is legally irrelevant under TRIA.  In any event, SPB either has no alleged right to the funds subject to the interpleader, or its answer demonstrates that it lacks any legal sufficient grounds to assert a claim which would be superior to those of Banco Nacional de Cuba.  Hence, even under its irrelevant "superior interest" theory, SPB lacks *any* cognizable, enforceable right to Subaccount 203 which is not time-barred or abandoned.  Since no other party has answered, Petitioner is entitled to judgment on Citibank's interpleader.

C. **SPB's "Affirmative Defenses" Provide No Basis to Defeat Petitioner's Right to A Turnover Judgment**

Nor can SPB rehabilitate its irrelevant, baseless and time-barred claims of "superior interest" by arguing that TWEA, CACR and/or TRIA cannot be applied to Subaccount 203 because they are variously unconstitutional, void for vagueness, extraterritorial, or implemented contrary to principles of international comity.  These "defenses" are not properly before this

---

[5] Further, SPB has failed to file the requisite notice under Fed. R. Civ. P. 5.1, required in all cases in which a party challenges the Constitutionality of a statute.

9

Court in the context of Citibank's interpleader (since they do not present any basis upon which Citibank could possibly be liable to SPB for turnover of the funds within the meaning of Fed. R. Civ. P. 22; *i.e.,* Citibank could not be exposed to double or multiple liability for its compliance with a statute or regulation which is later declared unconstitutional). Further, since – as discussed above – SPB has no cognizable interest in the *res* that is the subject of this proceeding, it lacks the requisite Article III constitutional standing to present such claims for adjudication by this Court. *See U.S. v. Currency $267,961.07,* 916 F.2d 1104 (6th Cir. 1990) ("With respect to Article III standing, a claimant must demonstrate a legally cognizable interest in the defendant property.") (citing *U.S. v. $38,000.00 in U.S. Currency,* 816 F.2d 1538, 1544 (11th Cir. 1987)).

In any event, these "affirmative defenses" have no basis as a matter of law.

    1.    <u>SPB's Constitutionally-Based Defenses Fail As a Matter of Law</u>

As demonstrated in the Pet. III Mem. at 14 to 15, the Supreme Court has long, and repeatedly, held that the blocking provisions of TWEA (and IEEPA) are fully constitutional under both the Fourth and Fifth Amendments, *See, e.g., Propper v. Clark,* 337 U.S. 472 (1949); *Zittman v. McGrath,* 341 U.S. 446 (1951); *Orvis v, Brownell,* 345 U.S. 183 (1953), *Dames & Moore v. Regan,* 453 U.S. 654 (1981). Similarly, the use of blocked assets "to compensate our citizens or ourselves for the damages done by the governments of the nationals affected" is fully constitutional under the Fifth Amendment. *Propper v. Clark,* 337 U.S. at 481.[6]

---

[6] *See also E-Systems, Inc. v. United States*, 2 Cl. Ct. 271 (Claims Ct. 1983) ("where the property of nationals of a hostile government [such as Cuba] is involved, there is no constitutional prohibition against confiscation without any compensation to the owners.") This principle applies directly to disposition of property blocked under CACR. *Sardino v. Federal Reserve Bank of New York,* 361 F.2d 106, 112, 113 (2d. Cir. 1966), *cert. denied,* 385 U.S. 898 (1966)("There is a long history of governmental action compensating our own citizens out of foreign assets in this country for wrongs done them by foreign governments abroad"; and "This would seem a rather clear intimation that if Congress should ultimately choose to apply the blocked assets of Cuban nationals to that purpose, the Fifth Amendment would not stand in its way").

Nor would SPB have any basis to complain about the application of these statutes based on Fourth Amendment grounds. Indeed, SPB lacks any standing to pursue this claim, unless it can demonstrate that it has pursued administrative relief in seeking clarification, *see, e.g., Valbrun v. Hogan,* 439 F.3d 136 (2d Cir. 2006)(per curiam), or to obtain a license from OFAC to recover the property it claims to own. In any event, any argument that OFAC's blocking regulations (and the statutes that authorize them) run afoul of the Fourth Amendment was rejected by the United States District Court for the District of Columbia in *Zarmach, supra,* 2010 WL 4627838 at *8. In so ruling, the *Zarmach* Court construed these statutes and Constitutional provisions wholly consistently with settled precedent. *See also Holder v. Humanitarian Law Project,* 130 S.Ct. 2705, 2719-20 (U.S. 2010); *Freedom to Travel Campaign v. Newcomb,* 82 F.3d 1431 (9th Cir. 1996).

In sum, all of SPB's Constitutionally-based "affirmative defenses" fail to present any basis to refuse to enforce Petitioner's judgment, as contemplated by TRIA.

    2.    SPB Has No Viable Defense Based on
<br>            <u>International Comity and Extraterritoriality</u>

Nor could SPB foreclose enforcement under TRIA by reference to "principles of international comity." As the Second Circuit observed in *Pravin Banker Associates, Ltd. v. Banco Popular Del Peru,* 109 F.3d 850, 854 (2d Cir. 1997):

> Although courts in this country have long recognized the principles of international comity and have advocated them in order to promote cooperation and reciprocity with foreign lands, comity remains a rule of "practice, convenience, and expediency" rather than of law. *Somportex Ltd.,* 453 F.2d at 440; *see also id.* ("Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation."); *Cunard S.S. Co.,* 773 F.2d at 457 (quoting *Somportex*). **And courts will not extend comity to foreign proceedings when doing so would be contrary to the policies or prejudicial to the interests of the United States.** *See Allied Bank Int'l v. Banco Credito Agricola de Cartago,* 757 F.2d 516, 522 (2d Cir.1985); *Somportex Ltd.,* 453 F.2d at 440. **"No nation is under unremitting obligation to enforce foreign**

**interests which are fundamentally prejudicial to those of the domestic forum.** Thus, from the earliest times, authorities have recognized that the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act." *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 937 (D.C.Cir.1984). (emphases added).

Simply stated, international comity imposes no constraints on Congressional enactment, or administrative enforcement, of blocking provisions, especially where, as here, they relate to national security interests in precluding trade with our enemies, and punishing state sponsors of terrorism (and those who, like SPD) do business with them.

Similarly, SPB cannot prevail, as a matter of law, on its assertion that execution of Petitioner's judgment under "TRIA, the CACRs or other provision of law" would be "impermissible" because such laws would be applied "extraterritorially." Nothing in the Constitution, or in any other body of law which would apply in this proceeding, prohibits Congressional enactment of legislation which applies "extraterritorially." *See, e.g., E.E.O.C. v. Arabian American Oil Co.,* 499 U.S. 244, 248 (1991) ("Congress has the authority to enforce its laws beyond the territorial boundaries of the United States.")

But the Court need not reach this issue because SPB's factual premise is false. As the *Zarmach* court observed, in addressing the very same argument made by a party to an EFT blocked under OFAC regulations, "the exercise of OFAC blocking authority over the assets is not, as *Zarmach* claims, an exercise in 'extraterritorial jurisdiction.' The regulations explicitly prohibit the transfer of any "property or interests in property . . . that are in the United States, . . . It is undisputed both that the blocked funds came within U.S. jurisdiction during the course of the original transfer, and are currently held by the [intermediary bank]."

The same is true here. As Citibank averred and SPB conceded, Subaccount 203 is held on the books of Citibank in the United States, and Citibank is a person subject to the territorial

jurisdiction of the United States. The application of TRIA here is entirely within U.S. territory. SPB is incorrect in characterizing this proceeding as "impermissibly extraterritorial."

### 3. SPB Cannot, As a Matter of Law, Prevail Based on Post-Blocking Payment

SPB alleges that it recaptured some interest in the account through post-blocking actions or transactions. But such conduct is unlawful. As Pet. III Mem. demonstrates at 5 to 7, CACR expressly bars any such transactions and provides that they are "null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power or privilege with respect to such property." CACR § 515.203(a). For this reason, no party (whether an originator, originating bank, or otherwise) can invoke such theories as "subsequent payment" or "extinguishment." *See Zarmach, supra,* at *6.

### 4. SPB Cannot Prevail on its "Mistake" Defense

Lastly, SPB alleges that it should be able to claim an interest in Subaccount 203 based on its unsupported allegation that the EFT instructions mistakenly mentioned Banco Nacional de Cuba. As Pet. III Mem. demonstrates, such claims of mistake do not constitute any basis to challenge a blocking in a judicial proceeding. Under OFAC regulations, SPB could seek a license through which this "mistake" could be rectified, through exercise of OFAC's discretion. SPB has failed to allege that it obtained such a license. Without such a license, this allegation of "mistake" has no bearing in this proceeding, as a matter of law.

## POINT II

## PETITIONER IS ENTITLED TO JUDGMENT ON THE
## TURNOVER PETITION REGARDING SUBACCOUNT 203

### A. Petitioner is Entitled To Judgment Against Citibank on the Turnover Petition

Citibank has not presented any defense to the entry of judgment against it with respect to the enforcement of the Turnover Petition and the Court has already so entered judgment as to the other Tranche I accounts.  Petitioner is now entitled to judgment against Citibank.

### B. Petitioner is Entitled to Judgment Against the Judgment Debtors

Petitioner served the Turnover Petition upon each judgment debtor no later than September 2010.  None has appeared.  Rule 56. 1 Statement ¶ 8. Moreover, the Court has already ordered that it would enter judgment on the Petition if SPB failed to appear.  SPB did appear, but as demonstrated above, it has provided no basis to deny turnover.  Under these circumstances, Petitioner is entitled to entry of judgment against the Judgment Debtors with respect to the blocked assets held in their names or in the names of their agencies or instrumentalities.[7]

---

[7] Neither Citibank nor SPB has challenged the well-pleaded allegations that Banco Nacional de Cuba is an agency or instrumentality of the Republic of Cuba.  Nor could they do so in good faith.  As demonstrated in Pet. Tranche III Memo, at 13, Banco Nacional de Cuba falls clearly within this category.  Indeed, Banco Nacional de Cuba has already been held to be the agency or instrumentality of the Republic of Cuba on numerous occasions, often at the behest of New York banking institutions.  *See, e.g., Banco Nacional de Cuba v. Chemical Bank New York Trust Co.,* 594 F.Supp. 1553, 1556 (S.D.N.Y. 1984); *see also Weininger v. Castro,* 462 F. Supp. 2d 457, 498 (S.D.N.Y. 2006) ("JPM Chase states that Banco Nacional is 'engaged in central banking activities' and is an agency or instrumentality within the meaning of the FSIA." (citing Kerr Decl. ¶ 18(b)); Order of September 21, 2010 (Dkt. No. 91) (directing turnover of Tranche I accounts); Order of February 18, 2011 Dkt. No. 159) (directing turnover of Tranche I account).  To the extent that there remains any dispute as to this issue, this is fully eliminated by the affidavits of Professor Jaime Suchlicki, attached as Exhibit I to the Perkins Decl. dated April 15, 2011.

## CONCLUSION

For all these reasons, Petitioner's motion for judgment under Rule 12(c) regarding Citibank's interpleader and her motion for summary judgment under Rule 56 on her Turnover Petition I should be granted in all respects.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _____
    James W. Perkins (JWP 6684)
    Bryn K. Haffey (BH 0519)
    Attorneys for Petitioner
    200 Park Avenue, 38th Floor
    New York, New York 10166
    Phone: (212) 801-3188
    Fax:   (212) 801-6400

GREENBERG TRAURIG, LLP
    David A. Baron
    2101 L Street, N.W.,
    Suite 1000
    Washington DC 20037
    Phone: (202) 331-3100
    Fax:   (202) 331-3101

COLSON HICKS EIDSON
    Roberto Martinez
    Ronald W. Kleinman
    255 Aragon Avenue
    Second Floor
    Coral Gables, Florida 33134
    Phone: (305) 476-7400
    Fax:   (305) 476-7444